**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joseph Daniel BACA,
Defendant-Appellant.**

**No. 81–1542.**

United States Court of Appeals,
Tenth Circuit.

Aug. 27, 1982.

---

Tova Indritz, Asst. Federal Public Defender, Albuquerque, N. M., for defendant-appellant.

Ben Silva, Asst. U. S. Atty., Albuquerque, N. M. (R. E. Thompson, U. S. Atty., and Stanley K. Kotovsky, Jr., Asst. U. S. Atty., Albuquerque, N. M., on the brief), for plaintiff-appellee.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Joseph Daniel Baca appeals his convictions for possession of heroin with intent to distribute it, and for distribution of heroin, both violations of 21 U.S.C. § 841(a).

A security guard at a vocational school saw Baca, a part-time student there, in the school parking lot crouched down beside his

car with another man and a woman. The guard approached closely and watched Baca furtively pour gray powder from a small bottle into a plastic bag. When Baca saw the security guard, he yelled "run" and dropped the bottle. The guard seized the woman, the bottle, and a $10 bill she had in hand. Later, the Albuquerque police arrested Baca. A chemical analyst for the Albuquerque Police Department tested the powder in the bottle and concluded it was heroin. The State of New Mexico brought charges against Baca, but dropped them six months later. After another six months, pursuant to an order of the state court, the Albuquerque police destroyed the heroin. Soon thereafter, Baca was indicted, tried, and convicted of the federal offenses from which he has taken this appeal.

■ On appeal Baca contends (1) his due process and *Brady* rights were violated because he was convicted without the powdery substance being introduced into evidence, and because he was not able to independently test the substance to determine whether it was heroin;[1] (2) he received ineffective assistance of counsel; (3) he was prejudiced by unreasonable delay occurring before he was indicted on federal charges; and (4) he was not mentally competent at the time of trial.

1. The allegation is not properly founded on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). There is no showing that the destroyed powder would have been exculpatory or that the government suppressed the evidence. *See United States v. Augenblick*, 393 U.S. 348, 355–56, 89 S.Ct. 528, 533, 21 L.Ed.2d 537 (1969); *Killian v. United States*, 368 U.S. 231, 242, 82 S.Ct. 302, 308, 7 L.Ed.2d 256 (1961); *United States v. Arra*, 630 F.2d 836, 848 (1st Cir. 1980). Under the test discussed below the courts concentrate on both the fault of the government and the prejudice to a defendant when evidence is lost or destroyed. Few of the cases focus on whether the power to sanction is founded on the court's interest in protecting the judicial process from the illegal conduct of government officers, *see Casey v. United States*, 276 U.S. 413, 425, 48 S.Ct. 373, 376, 72 L.Ed. 632 (1928) (Brandeis, J., dissenting), or upon the defendant's due process rights. We think that in all but the most outrageous cases, if sanctions are imposed because

This Court previously has held that absent bad faith or fraudulent purpose on the part of the government, the destruction of evidence prior to trial does not necessitate reversal of a criminal conviction. *Chandler v. United States*, 318 F.2d 356 (10th Cir. 1963). When evidence has been lost or destroyed, courts engage in "a case-by-case assessment of the government's culpability for the loss, together with a realistic appraisal of its significance when viewed in the light of its nature, its bearing upon critical issues in the case and strength of the government's untainted proof." *United States v. Grammatikos*, 633 F.2d 1013, 1019–20 (2d Cir. 1980); *accord United States v. Picariello*, 568 F.2d 222, 227 (1st Cir. 1978); *United States v. Heiden*, 508 F.2d 898, 902 (9th Cir. 1974). While the possibility of unprovable governmental wrongdoing is greater when, as here, the evidence was destroyed before rather than after the indictment of defendant on the federal charges, no court appears to have applied any different analysis in the two situations. *See, e.g., United States v. Grammatikos*, 633 F.2d at 1018–22; *United States v. Traylor*, 656 F.2d 1326, 1334–35 (9th Cir. 1981); *United States v. Henry*, 487 F.2d 912 (9th Cir. 1973).

■ In the instant case evidence was destroyed not by federal authorities but by

of governmental misconduct they are based upon the supervisory power of the courts. *Cf. United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973) ("[W]e may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction ... [but the government's supplying a critical substance in methamphetamine production] is distinctly not of that breed.") Insofar as sanctions are based upon prejudice to the defendant, we think the foundation is the Due Process Clause, since the test we apply is whether the defendant could or did receive a fair trial under the circumstances. *See United States v. Wilks*, 629 F.2d 669, 674 (10th Cir. 1980); *United States v. Picariello*, 568 F.2d 222, 227 (1st Cir. 1978).

state officers pursuant to an apparently routine order of the state district court. Baca attempts to show bad faith in that the federal charges were brought shortly after the state destroyed the powder—implying that the state found the substance was not heroin, and the federal authorities, aware of that fact, purposefully delayed prosecution until after the destruction. But nothing appears in the record to show collusion or even contact between state and federal authorities prior to the destruction of the powder. The state dropped its charges in part because of Baca's heroin addiction and mental problems. Nothing appears in the record why the federal government delayed its prosecution, although it has a policy against duplicating state prosecutions arising out of the same factual circumstances. *See Petite v. United States*, 361 U.S. 529, 530–31, 80 S.Ct. 450, 451, 4 L.Ed.2d 490 (1960). Baca makes no showing of culpability on the part of the federal government for the loss of this evidence, and we decline to adopt a *per se* rule that destruction of important evidence by state officers prior to the issuance of a federal indictment precludes the federal government from prosecuting for violation of its laws.

■ Turning now to the significance of the loss of the evidence, the destroyed powder is important to this case because an essential element of the government's burden of proof was to show that it was heroin. The ideal situation is to have the substance available for testing by the defendant. But the legal question is whether Baca was denied a fair trial because the powder was not available. See *United States v. Wilks*, 629 F.2d 669, 674 (10th Cir. 1980); *accord United States v. Traylor*, 656 F.2d 1326, 1334–35 (9th Cir. 1981) (destruction of cocaine by state authorities apparently prior to federal indictment). Baca alleges he was prejudiced because he was not able to determine whether the Albuquerque Police Depart-

ment had correctly concluded that the powder was heroin. However, lack of independent verification alone is not enough to demonstrate prejudice. If it were, the government would never be permitted to prosecute when key evidence is inadvertently lost, destroyed, or stolen. In the instant case, other evidence exists to support the claim that the substance was heroin.

■ The Albuquerque police department expert who analyzed the powder testified regarding five standard tests he utilized to identify the substance as heroin. Baca challenges the analyst's credentials and the accuracy of the testing process; but these issues go to credibility and were for the jury to consider. The analyst had five years experience, had taken 36 semester hours of college level chemistry, and had tested heroin approximately 50 times. We do not find either the analyst or the testing procedures so lacking in credibility as to create such substantial doubt about the identity of the substance that we should reverse the conviction as a matter of law. *See State v. Chouinard*, 96 N.M. 658, 634 P.2d 680, 684–85 (1981). Supporting the analyst's expert opinion is an Albuquerque police detective's testimony that he had a chemical technician field test the powder and "it proved to be heroin." R.IV, 85. Also, Baca admittedly was addicted to heroin, and at the time of the seizure of the bottle at least one of his companions had needle marks consistent with recent heroin usage. Furthermore, the state's charge against Baca for heroin possession was not dropped until about six months after Baca's arrest. During that time his experienced legal counsel did not seek to independently examine the powder, which was still available for testing.[2] Apparently defense counsel did not know the powder had been destroyed until the time of trial on the federal charges, and, prior to trial, he did not seek a

---

**2.** We do not imply counsel had a duty to seek a test during the state prosecution, especially

since he succeeded in having the state charges dismissed.

test of the substance.[3] We conclude that Baca has given no substantial reason to doubt that the powder was heroin. *See United States v. Traylor,* 656 F.2d at 1335; *United States v. Arra,* 630 F.2d 836, 849–50 (1st Cir. 1980).

Baca's claim of ineffective assistance of counsel is tested by whether he received "the skill, judgment and diligence of a reasonably competent defense attorney." *See Dyer v. Crisp,* 613 F.2d 275 (10th Cir.), *cert. denied,* 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980). Baca contends his trial counsel fell short of the mark because he failed to seek a sample of the powdery substance for independent examination. But this could have been a strategic decision since the government's case would have been strengthened if Baca's experts had confirmed that the substance was heroin and that information had come to the attention of the jury. The other alleged shortcomings to which Baca points are either strategic decisions or the sort of minor errors that occur in nearly every trial. The record shows Baca's counsel provided a vigorous defense. Any impropriety with regard to Baca's appeal was cured when the appeal was allowed, albeit belatedly.

Baca's third claim is that he was impermissibly prejudiced by unreasonable delay between his arrest and his indictment on federal charges. Although thirteen months elapsed between Baca's arrest and the federal indictment, half of this time was consumed by the state's aborted prosecution. Baca's claim of prejudice by the delay is insubstantial, and Baca has made no showing that the government deliberately delayed prosecution to its advantage. *See United States v. Marion,* 404 U.S. 307, 324–25, 92 S.Ct. 455, 465–66, 30 L.Ed.2d 468 (1971); *United States v. Revada,* 574 F.2d 1047, 1048 (10th Cir. 1978).

Finally, Baca claims that at the time of trial he was mentally incompetent. That issue was raised at trial, and the judge ordered Baca examined, first by a local psychiatrist and later for a thirty-day period by the staff of the Medical Center for Federal Prisoners. Based upon the medical testimony, the trial court found Baca to be competent, a conclusion we must accept unless it is clearly erroneous. *See Arnold v. United States,* 432 F.2d 871, 874 (10th Cir. 1970). Although the doctor who testified on behalf of the Medical Center had not personally examined Baca, he was qualified to present summaries of the other doctors' evaluations. We have reviewed the medical reports and testimony and hold that the trial court's conclusion as to competency was not clearly erroneous.

AFFIRMED.

---

**3.** This failure is alleged by counsel representing Baca on appeal as evidence of incompetent representation at trial. Appellant's Br. 25. Defense counsel objected to the police analyst's testimony on the basis of insufficient foundation as to chain of custody (R.IV, 99, 108), and asked for dismissal at the close of trial because the government failed to produce the heroin (R.V, 241). But Baca's principal defense, rejected by the jury, was insanity.