769 P.2d 1141

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Roger LAW, Defendant–Appellant.**

No. 17365.

Court of Appeals of Idaho.

March 1, 1989.

Petition for Review Denied June 29, 1989.

Alan E. Trimming, Ada County Public Defender, Boise, for defendant-appellant.

Jim Jones, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

In this case, the appellant, Roger Law, challenges the district court's denial of his motion to suppress evidence seized incident to his arrest by Boise police officers. Law argues that his arrest was simply a pretext or subterfuge in order to conduct a search of him and his vehicle. We affirm.

The following facts were supplied to the district court by way of testimony presented at the suppression hearing and through a transcript of Law's preliminary hearing. While Boise police officers had under surveillance a residence used in suspected narcotics and stolen property transactions, Officer Webb observed a Dodge automobile arrive at the house. The driver was the sole occupant of the vehicle. Following standard procedure connected with this surveillance, Webb radioed for information relative to the license plate on the vehicle, asking for a registration check and for the name of the registered owner. In response, he learned that the vehicle was registered to Roger Law. Webb then asked for a record and warrants check on Law. Webb found out that there was an outstanding warrant for Law's arrest for probation violation and also that Law's driver's license was suspended. He was given a physical description of Roger Law.

Watching the driver of the Dodge enter the house, then return several times to the vehicle, change his clothes and reenter the house, Webb determined that the driver of the Dodge met the description given him of Roger Law.

When the driver finally left the house and drove away in his vehicle, Officer Webb radioed the information he had gained, to the other surveillance detectives. Webb did not instruct the officers to stop the Dodge. In the meantime, another officer, Sergeant Smith, was responding to an earlier call by Webb to come to the surveillance point "because of the vehicles that were pulling up to the house." Evidently, as Smith neared the area, he heard Webb's report that the Dodge was leaving the scene and was headed south on Vista Avenue; that the vehicle was registered to Roger Law; that the driver of the Dodge fit the description of Roger Law; that there was a warrant for Law's arrest; and that Law's driver's license was under suspension. When Smith reached Vista Avenue, he saw the Dodge vehicle, followed it for about a half-mile and effected a stop. Smith asked the driver for his license, registration and proof of insurance. The driver stated he had none of those items and he told Smith his name—a name other than Roger Law. As Smith was talking with the driver, another officer who had arrived at the scene commented that he could see a knife under the seat of the vehicle. Smith then had the driver exit the vehicle and arrested him for possession of a concealed weapon. At that time, the driver admitted he was Roger Law. Smith then told Law he was under arrest also on the outstanding warrant and for driving on a suspended driver's license. The officers proceeded to search Law's person and his vehicle, finding quantities of several controlled substances, other weapons, and miscellaneous drug-related paraphernalia.

After a preliminary hearing, Law was charged in the district court with felony possession of methamphetamine, and with misdemeanors of possession of marijuana, carrying concealed dangerous weapons,[1] possession of drug paraphernalia and of driving without privileges. Apparently the probation violation charge was disposed of in a separate proceeding. Law moved to suppress all items seized from his vehicle, on the ground there was no probable cause for the police to have stopped Law's vehicle.

At the hearing on the motion to suppress, the district court was presented with the transcript of Law's preliminary hearing which contained the testimony of Sergeant Smith, outlined above. Additional evidence was adduced by way of testimony from Officer Webb, concerning his role and radio communication preceding Law's arrest, and from other witnesses who confirmed that Law's driving privileges were under suspension and that a bench warrant for his arrest for probation violation had been issued about a week before Law was arrested by Sergeant Smith.

At the conclusion of the hearing, the district court denied Law's motion to suppress. The court found there was articulable and reasonable suspicion to make the stop, based on the information that the driver of the vehicle may have been suspended from driving privileges and because there was a bench warrant for his arrest. The court held there was probable cause for the arrest on that initial information and that there was probable cause to make an arrest for the events that occurred following the stop. The court concluded the search was valid.

Through plea negotiations, Law subsequently pled guilty to the felony charge of possession of methamphetamine and the

---

1. This charge did not include the knife first observed under the vehicle seat by the officers but was the result of other weapons found on Law's person and in the vehicle, discovered during the subsequent search. At Law's preliminary hearing, the presiding magistrate had found probable cause did not exist to bind Law over for trial with regard to the knife under the

seat, determining that because the officers were able to see the knife in the car, it was not a concealed weapon. *See e.g., State v. McNary*, 100 Idaho 244, 247, 596 P.2d 417, 420 (1979) ("The general test of concealment is whether a weapon is so carried as not to be discernible by ordinary observation").

state dismissed the other, misdemeanor charges. Law reserved the right to seek appellate review of the court's suppression ruling, under I.C.R. 11(c).

On appeal, Law contends the evidence should have been suppressed by the district court because his stop and arrest were only a pretext in order for the police to conduct their ultimate search. He asserts that the motives of the police were improper and should predominate over any right the police may have had to apprehend him on the bench warrant or for driving while his license was suspended. Law's argument raises a constitutional question. Therefore, our standard of review on this issue is one of deference to the trial court's factual findings unless they are clearly erroneous, but free review of the trial court's determination as to whether constitutional requirements were satisfied in light of the facts as found. *State v. Yeates,* 112 Idaho 377, 380, 732 P.2d 346, 349 (Ct.App.1987).

■ We note, initially, that the state contests the approach taken by Law in this appeal. The state points out that, in the proceedings below, Law contended the stop of his vehicle was not justified by articulable suspicion and there was not probable cause for his arrest. The state argues that the pretext and motive theories currently urged by Law were never presented in conjunction with his suppression motion.

While it appears that the arguments of Law's counsel during the suppression hearing remained primarily within the limited scope suggested by the state, defense counsel several times during the hearing did assert to the court that the case involved a pretext stop. Although that theory was not vigorously pursued in the proceeding, we believe that it was sufficiently present-

ed to allow Law to continue with it on appeal without running afoul of the general rule against asserting new theories on appeal. *See, e.g., Masters v. State,* 105 Idaho 197, 668 P.2d 73 (1983).

■ Stopping an automobile and detaining its occupants constitute a "seizure" within the meaning of the fourth and fourteenth amendments, even though the purpose of the stop is limited and the resulting detention quite brief. *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *State v. Haworth,* 106 Idaho 405, 679 P.2d 1123 (1984). In *Prouse,* the Court addressed random stops of motorists by police. The Court said:

> Accordingly, we hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

440 U.S. at 663, 99 S.Ct. at 1401. Here, based upon the information provided to him by Officer Webb, Sergeant Smith had articulable and objectively reasonable suspicion to stop the Dodge automobile for the investigative purpose of determining whether it was being driven by the registered owner, Roger Law, an unlicensed driver wanted on a bench warrant.[2] This case clearly falls within the exception noted in *Prouse.* However, Law argues for invalidation of Smith's investigative stop and subsequent arrest and search activities on the suggestion that Smith's motive was improper.

---

**2.** Law does not raise any issue as to the propriety of Sergeant Smith in acting on information communicated to Smith by Officer Webb regarding the outstanding warrant or suspended driver's license (which eventually proved to be true). In *United States v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), officers had conducted an investigative stop of a vehicle, based upon a flyer or bulletin issued by another police department stating that the operator of the vehicle was wanted for investigation of an armed robbery. On review, the United States

Supreme Court upheld the investigatory stop. The Court concluded that if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that a wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, to pose questions to the person, or to detain the person while attempting to obtain further information. 469 U.S. at 232, 105 S.Ct. at 682. *See also, State v. Crawford,* 99 Idaho 87, 577 P.2d 1135 (1978); *State v. Polson,* 81 Idaho 147, 339 P.2d 510 (1959).

Notably, there is no evidence in this record showing that Smith stopped the Dodge vehicle for any reason other than to determine whether the driver of the automobile was Roger Law, a person whose driving privileges had been revoked and who was wanted for arrest on a probation-violation warrant.

Our research indicates that where an officer has an objectively reasonable basis for making an investigative stop, the officer's motive or actual state of mind is irrelevant. In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court stated that the validity of a brief investigatory stop was to be "judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Id.* at 21–22, 88 S.Ct. at 1880. Correspondingly, in *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), the Court announced that a *Terry* investigative stop will be upheld where "the detaining officers [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* at 417–18, 101 S.Ct. at 694–95. Utilizing an objective standard, courts frequently have discounted the subjective intent or motivations of searching officers. In *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978), the Court said that "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." And in *Maryland v. Macon*, 472 U.S. 463, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985), the Court held that whether a violation of the fourth amendment has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken. *See also United States v. Villamonte-Marquez*, 462 U.S. 579, 584 n. 3, 103 S.Ct. 2573, 2577 n. 3, 77 L.Ed.2d 22 (1983). Other cases examining challenged searches under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved, include: *United States v. Nersesian*, 824 F.2d 1294 (2d Cir.1987), *cert. denied, Abdouch v. United States*, ––– U.S. –––, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987), *cert. denied, Nersesian v. United States*, ––– U.S. –––, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987), *cert. denied, Annabi v. United States*, ––– U.S. –––, 108 S.Ct. 1018, 98 L.Ed.2d 983 (1988); *United States v. Smith*, 643 F.2d 942 (2d Cir.), *cert. denied, Smith v. United States*, 454 U.S. 875, 102 S.Ct. 350, 70 L.Ed.2d 182 (1981); *United States v. Causey*, 834 F.2d 1179 (5th Cir.1987); *United States v. Basey*, 816 F.2d 980, *rehearing denied*, 820 F.2d 1223 (5th Cir.1987); *Dodd v. Beto*, 435 F.2d 868 (5th Cir.1970), *cert. denied*, 404 U.S. 845, 92 S.Ct. 145, 30 L.Ed.2d 81 (1971); *United States v. Hollman*, 541 F.2d 196 (8th Cir.1976); *Klingler v. United States*, 409 F.2d 299 (8th Cir.), *cert. denied*, 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969); *United States v. Bugarin-Casas*, 484 F.2d 853 (9th Cir.1973), *cert. denied, Bugarin-Casas v. United States*, 414 U.S. 1136, 94 S.Ct. 881, 38 L.Ed.2d 762 (1974); *Green v. United States*, 386 F.2d 953 (10th Cir.1967); *Sirimarco v. United States*, 315 F.2d 699 (10th Cir.), *cert. denied*, 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1032 (1963); *United States v. Bates*, 840 F.2d 858 (11th Cir.1988); *United States v. Smith*, 799 F.2d 704 (11th Cir.1986).

The approach taken by these courts is reflected by the following statement in *Nersesian:*

In our view, a valid basis for a detention and search which exists in the first place, is not rendered invalid by the fact that police resort to a pretext for one purpose or another to continue that detention and search. While in most instances, it would seem appropriate for the police to be forthright and honest in expressing the basis upon which they are relying in conducting an investigatory stop and search, the justification given by the police is not essential in determining wheth-

er the apprehension is constitutionally justified. The pivotal factor in determining whether a search violates the fourth amendment is whether there exists at the outset a valid basis for that search.

824 F.2d at 1316.

Here, Sergeant Smith had a valid basis, upon articulable suspicion and objective reasonableness, to stop Law's vehicle. Once the driver of that vehicle was identified by his own admission as Roger Law, Smith was justified in placing him under arrest for driving without privileges and pursuant to the outstanding warrant for probation violation. The warrantless search of Law's person and vehicle was permissible as a search incident to arrest. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *State v. Calegar*, 104 Idaho 526, 661 P.2d 311 (1983). Because the stop, arrest and search were constitutionally valid, any underlying motive of Sergeant Smith is irrelevant. Consequently, we affirm the denial of Law's motion to suppress.

HUNTLEY and WINMILL, JJ., Pro tems., concur.