UNITED STATES of America, Plaintiff,

v.

John F. DOUGHERTY, Defendant.

No. 89–CR–9–C.

United States District Court,
W.D. Wisconsin.

June 6, 1989.

Jeffrey Anderson, Asst. U.S. Atty., Madison, Wis., for plaintiff.

Charles W. Giesen, Madison, Wis., for defendant.

## ORDER

CRABB, Chief Judge.

This case is before the court on defendant's objections to the Report and Recommendation entered herein by the United States Magistrate on May 25, 1989. The magistrate recommended denial of defendant's motions to suppress evidence derived from the seizure of 700 alleged marijuana plants and to dismiss the indictment on the ground the law enforcement officials intentionally destroyed the vast majority of plants in violation of defendant's right to potentially exculpatory evidence.

From my review of the objections, the magistrate's report, the parties' briefs, and the transcripts of portions of the evidentiary hearing, I conclude that the magistrate's recommendation should be adopted, as well as his proposed findings of fact and conclusions of law.

Defendant urges that the findings of fact be amended to add as a fact that his witness, Professor Davis, was unable to determine from the examination of either the videotape or the photographs of the seized plants whether they were marijuana. However, defendant has not filed the transcript of Professor Davis's testimony from which I could confirm that he did make that statement, and that it was uncontradicted. His failure to do so does not affect the outcome of the motions; even if I were to find that the videotapes and photographs were insufficient to allow a scientist to make a determination of the plants at issue, it would not follow that dismissal of the indictment is warranted.

As the magistrate made clear in his report, the test for determining the effect of destruction or loss of evidence by the prosecution is whether the government's failure to preserve the evidence is the result of bad faith, and in addition, whether the lost or destroyed evidence is of likely significance to the defendant's case. *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). The magistrate found no evidence of bad faith on the part of the state officials who made the seizure, and defendant has shown no reason to dispute that finding by the magistrate. He found also that any exculpatory value the plants might have had would not have been known to the officers when they arranged for their destruction. And he pointed out that the loss of the evidence provides defendant an opportunity to attack the sufficiency of the evidence against him. It is the government that bears the burden of proving the existence of the 100 plants that would support an enhanced penalty; without those plants and with deficient photographs and videotapes and the testimony of persons who probably lack scientific training in the identification of marijuana plants, the government may well feel the loss of the plants more than the defendant.

Defendant objects to the magistrate's proposed conclusion that the seizure of the marijuana without a warrant was unconstitutional, but he does not expand upon the arguments he made in the briefs he filed with the magistrate. Nothing in the magistrate's treatment of this issue requires further discussion; it is clear that defendant had no expectation of privacy that would have prevented the warrantless seizure of marijuana from the fields beyond the curtilage of his home.

## ORDER

IT IS ORDERED that the findings of fact and conclusions of law proposed by the United States Magistrate in the Report and Recommendation entered herein on May 25, 1989, are ADOPTED as the court's own and the defendant's motions to dismiss the indictment and to suppress the evidence of 700 growing plants seized from him on September 7, 1988, are DENIED.

## REPORT AND RECOMMENDATION

Filed May 26, 1989

JAMES GROH, United States Magistrate.

In an indictment returned on January 18, 1989, defendant John F. Dougherty is charged with one count of possessing with intent to distribute one hundred marijuana plants in violation of 21 U.S.C. § 841(a)(1). The possession of 100 or more plants is subject to the enhanced penalty provisions of 21 U.S.C. § 841(b)(1)(C) (1987 Supp.). Defendant moves to suppress evidence derived from the seizure of 700 growing plants, alleged to be marijuana, from a cornfield on his farm on the grounds that they were seized without a warrant in violation of his Fourth Amendment rights. (Dkt. ## 10, 20) He also moves to dismiss the indictment on the grounds that law enforcement officers intentionally destroyed the vast majority of those plants in violation of his due process right to potentially exculpatory evidence. (Dkt. ## 13, 22)

Evidentiary hearings were held at which the government presented the testimony of Special Agents John Palmer and David Matthews of the Wisconsin Department of Justice, Division of Criminal Investigation (DCI) and Professor Hugh Iltis, a taxonomist. Defendant presented the testimony of Iowa County Sheriff Nicholas Basting, Sheriff's Deputy Robert Crist and Professor Jerry Davis, a botanist.

The first motion attacks the warrantless seizure of the plants from defendant's cornfield. As the plants constituted contraband and were situated outside the curtilage of his residence, I conclude that the seizure did not infringe any constitutionally protected privacy interest of defendant. As to the second motion, the alleged misconduct is not chargeable to the federal government, but even if it were, I conclude that the destruction of the plants was not in bad faith within the meaning of *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1989) and *United States*

*v. Nesbitt,* 852 F.2d 1502 (7th Cir.1988). It will therefore be recommended that both of defendant's motions be denied.

## FINDINGS OF FACT

For the purpose of these motions only I find the following facts:

Defendant operates a 155–acre farm in Wyoming Township, Iowa County, Wisconsin. On August 16, 1988 Wisconsin DCI agents conducting aerial investigation observed what appeared to be marijuana growing in the middle of a cornfield on the farm. On August 23, 1988 several agents and an Iowa County Sheriff's Deputy entered the field and, from experience, visually identified at least some of the plants as marijuana.[1] DCI agents and Iowa County deputies made further entries onto defendant's land for observations of the field on August 31 and September 2, 1988.

The field was located more than one-fourth mile from defendant's residence. The agents were trained in the visual identification of marijuana and observed numerous plants, some up to seven feet high, rising above the surrounding four-foot high corn stalks. The plants grew in five to seven distinct, obviously cultivated, rows of varying length with 100 to 150 plants per row. Many of the plants were quite small.

On the morning of September 7, 1988, approximately twelve DCI agents and Iowa County Sheriff's officers went to defendant's farm and spoke to him. Defendant denied knowing about the plants and told DCI Agent Palmer to get rid of them. He allowed the agents entrance onto the back field and helped them to get to the field. The agents did not have a warrant.

Agent Matthews walked from one end of the patch to the other and took the video-tape of it. (Def. Ex. 8) The officers then began uprooting and cutting down all of the plants which were gathered for removal. The evidence officer, Deputy Crist, took and preserved samples, retaining five complete plants and the tops of eight others for evidence and analysis. Monitored by Deputy Crist who counted each plant, the remaining plants were loaded onto county trucks, taken to the Iowa County quarry, and burned. (See photos—Def. Exs. 3 and 4)[2]

The destruction of the plants was discussed and agreed upon by Sheriff Basting and DCI agents Nickel and Palmer. The prosecution of the defendant in either the state or the federal courts was contemplated at the time the decision to destroy the plants was made. Adequate space existed within the facilities of the Iowa County Sheriff's Department for the secure storage of at least one hundred of the plants.

Immediately following the destruction of the plants, Sheriff Basting and agents Nickel and Palmer went to the Iowa County District Attorney who declined to prosecute the case. Sometime thereafter the agents contacted the United States Attorney's Office for the first time with regard to possible federal prosecution. No federal agents, officers or employees were involved with the investigation, seizure or destruction of the plants.

## CONCLUSIONS OF LAW

I. *Motion to Suppress Evidence Seized Without a Warrant,* (Dkt. ## 10, 20).

Defendant contends that the removal of the 700 plants from his farm field was in violation of his Fourth Amendment right to be secure from unreasonable seizures. Defendant concedes that the entry onto his field by law enforcement officers and their resulting observations of the plants were lawful as the field was outside the curtilage of his residence. However, he argues that the seizure itself could only be justified under a warrant or in exigent circumstances, neither of which appear in this case.

---

**1.** The plants, or what is represented to be the plants, covered a rather extensive area as shown in the photographs and a videotape offered in evidence at the hearing. (See Gov't Exs. 2, 3; Def. Ex. 8)

**2.** There was evidence that the plants were hauled and burned together with plants seized from at least one other farm.

As defendant acknowledges, courts have long distinguished between the curtilage immediately surrounding the home and the open fields beyond, which, though still on private property, enjoy no constitutional protection.

> "Thus, courts have extended Fourth Amendment protection to the curtilage; and they have defined the curtilage, as did the common law, by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private. [citations omitted] Conversely, the common law implies, as we reaffirm today, that no expectation of privacy legitimately attaches to open fields." [footnote omitted]

*Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214 (1984). See also, *United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987).

Although *Oliver* and *Dunn* involved warrantless searches, it seems logically to follow that if there is no expectation of privacy to prevent the warrantless search of the open field, no such expectation exists to prevent the warrantless seizure of contraband (*i.e.*, marijuana) from that open field.[3] This was precisely the holding of *United States v. Crockett*, 812 F.2d 626, 628 (10th Cir.1987), on very similar facts— an essentially warrantless seizure of marijuana from an open field a quarter mile from the residence. *Id.* at 627–628.[4] The rationale in *Crockett* is plain enough. The lawfulness of warrantless seizures of contraband from public places is well established. See *Payton v. New York*, 445 U.S. 573, 586–587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). And open fields are equated with public places for Fourth Amendment purposes. *United States v. Dunn*, 480 U.S. 294, 304, 107 S.Ct. 1134, 1141, 94 L.Ed.2d 326 (1987). It follows that defendant had no protected interest in either the property seized or the place from which it was seized, and, therefore, neither a warrant nor exigent circumstances were necessary to justify the seizure. Defendant's motion must therefore be denied.[5]

## II. *Motion to Dismiss for Destruction of Material Evidence*, (Dkt. ## 13, 22).

Defendant is charged with the possession with intent to distribute one hundred or more marijuana plants, which number exposes him to an enhanced penalty under 21 U.S.C. § 841(b)(1)(C) (1987 Supp.). In this motion defendant challenges the government's right to maintain the prosecution in light of the fact that the investigating officers immediately and intentionally destroyed virtually all of the plants which constitute the subject matter of the prosecution. Defendant contends that the actions of the agents denied him access to the most relevant exculpatory evidence, the plants themselves, with which to challenge both their number and character. Thus, he urges, he has been deprived of his due process right to "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984).

The Supreme Court first addressed the question of the government's duty to preserve evidence in the *Trombetta* case in 1984. That case involved the failure of California authorities to save the breath samples of persons charged with driving while intoxicated. Just last year the Court revisited the question in *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102

---

3. Although defendant's other motion contests the nature of the plants seized, it is beyond reasonable question that at least some of the plants seized were marijuana and thus, contraband. Beyond that, the officers had probable cause to believe all the plants were marijuana.

4. The law enforcement officers in *Crockett* actually possessed a warrant which was challenged by defendants and implicitly assumed to be invalid by the Court of Appeals for the purpose of deciding the case.

5. This holding makes it unnecessary to treat at length the government's other, equally valid, claim—that defendant consented to the seizure. The undisputed testimony of Agent Palmer shows that plaintiff was insistent that the plants be removed and actually aided in their removal. There is no suggestion that defendant was ever in custody or that his consent was anything other than freely and voluntarily given. See *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

L.Ed.2d 281 (1988), a sexual assault prosecution in which the police failed properly to preserve certain specimens and articles of clothing taken from the victim. Defendant's entitlement to relief, if any, must be assessed in the light of these decisions.[6]

In *Trombetta* and *Youngblood* the Court approached the government's duty with regard to the preservation of evidence in the context of the not dissimilar prosecutorial obligation, first expressed in *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215 (1963), to disclose material evidence favorable to the accused. *Trombetta*, 467 U.S. at 485, 488–489, 104 S.Ct. at 2532, 2533–2534; *Youngblood*, 109 S.Ct. at 336–337.[7] However, the Court declined to apply the *Brady* standard in destruction of evidence cases.[8] Instead, a defendant who claims to have suffered as a result of the government's failure to preserve exculpatory evidence must first show bad faith on the part of the police. As explained in *Youngblood:*

> We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.*, those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defen-

dant. We therefore hold that *unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.*

*Youngblood*, 109 S.Ct. at 337 (emphasis added).[9] To establish bad faith, it is necessary to demonstrate " 'official animus' or a *'conscious effort* to suppress exculpatory evidence.' " *United States v. Nesbitt*, 852 F.2d 1502, 1520 (7th Cir.1988) (quoting *United States v. Zambrana*, 841 F.2d 1320, 1341–1342 (7th Cir.1988) and *California v. Trombetta*, 467 U.S. 479, 488, 104 S.Ct. 2528, 2533, 81 L.Ed.2d 413 (1984)) (emphasis added).[10]

Apart from the bad faith requirement, it must also appear that the destroyed evidence would be of likely significance to the defendant's defense.

> To meet this standard of constitutional materiality ... evidence must both possess an exculpatory value *that was apparent before the evidence was destroyed,* and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. (emphasis added)

*Trombetta*, 467 U.S. at 489, 104 S.Ct. at 2534; *Nesbitt*, 852 F.2d at 1520.

Applying these standards to the instant facts, I conclude that defendant's motion

---

**6.** *Trombetta* recognizes the alternate remedies of a motion to bar the prosecution or one to suppress the state's secondary evidence. 467 U.S. at 487, 104 S.Ct. at 2533.

**7.** Other judicial approaches to the issue are discussed in *United States v. Baca*, 687 F.2d 1356, 1359 n. 1 (10th Cir.1982).

**8.** Under *Brady* the government's duty to disclose is absolute—the good or bad faith of the government is irrelevant. *Youngblood*, 109 S.Ct. at 337.

**9.** The imposition of this heavy burden on a defendant is explained in part by the extreme difficulty courts often face in "divining the import" of the destroyed evidence. *Youngblood*, 109 S.Ct. at 337, citing *Trombetta*, 467 U.S. at 486, 104 S.Ct. at 2533. That concern also exists in the instant case and is particularly problematic when addressed pretrial. The more significant reason, however, lies in the Court's

unwillingness to read the "fundamental fairness" requirement of the Due Process Clause (citation omitted), as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution. *Youngblood*, 109 S.Ct. at 337.

**10.** Compare *United States v. Bryant*, 439 F.2d 642, 651 (D.C.Cir.1971) a decision before *Trombetta* and *Youngblood*, which placed on the government a "heavy burden" to show that the evidence was lost despite its good faith and "earnest efforts." *Bryant* introduced a balancing test which was often employed before *Trombetta* and *Youngblood*. See *e.g. United States v. Doty*, 714 F.2d 761, 764 (8th Cir.1983); *United States v. Baca*, 687 F.2d 1356, 1359 (10th Cir.1982). The *Youngblood* bad faith test supplants the balancing test.

should be denied. Looking first to the issue of the motive for the destruction of the marijuana, it is undisputed that the destruction was purposeful, and not by mistake or accident. It is also true, as defendant points out, that the government's rationale for the destruction—the want of a satisfactory storage facility—is contradicted by Dep. Crist who actually stored such plants as were preserved in the sheriff's second garage and stated that as many as 200 plants could have been accommodated there. What emerges from the testimony, however, is not a depiction of any animus toward defendant or any design or purpose to deprive him of exculpatory evidence. What is revealed instead is a remarkable lack of information on the part of Sheriff Basting as to his own department's facilities for storing evidence and a complete absence of any effort on the part of the Department of Criminal Investigation to obtain an appropriate storage facility. It would appear no one had given any thought to preservation of the contraband until the day of the raid, and Agent Nickel apparently felt no obligation to pursue the question after Basting said he had no room.[11] Though Agent Nickel

was the principal DCI Agent on this investigation, the government did not choose to present his testimony in any of the three installments of the evidentiary hearing. While Agent Palmer testified that he participated in the decision to burn the crop and in the meeting with the District Attorney, I note that Sheriff Basting did not refer at all to Palmer's participation or even his presence.

As irregular and haphazard as this operation appears to have been, I cannot say that the destruction was done in bad faith. Rather, I am satisfied that the failure to preserve the evidence was due to a lack of advanced planning and preparation. At the most, the blame may be ascribed to bad judgment and misinformation, but that does not add up to bad faith. *Nesbitt,* 852 F.2d at 1520.[12] Moreover, it must, in fairness, be observed that the officers were dealing with 700 plants of varying sizes, not just the one hundred in issue here. Thus, the actual availability of secure storage space for 200 plants (as Dep. Crist testified) would have afforded no particular solution.[13] The necessity of preserving one

---

**11.** Dep. Crist did offer the explanation that Agent Nickel had told him (Crist) that the Iowa County District Attorney had told him (Nickel) that it was all right to burn the marijuana. While I do not doubt Dep. Crist's word, I decline to accept this double hearsay to establish the fact of official approval or justifiable reliance. To begin, the time of the alleged conversation between Nickel and the District Attorney was not established. Sheriff Basting testified, however, that he and Agent Nickel *first* approached District Attorney Carolyn Smith regarding a possible prosecution *after* the marijuana had been set on fire. It was at this point that the District Attorney was asked, and declined, to prosecute. If Agent Nickel had actually consulted with the District Attorney in advance of the destruction of the crop, it is difficult to believe he would not have inquired about the prosecution at the same time, or that he would not have mentioned the visit and advice to Basting. Thus, I find it highly improbable that Nickel actually consulted with the District Attorney in advance of the destruction of the crop or received her approval to burn it.

**12.** Defendant urges that the officers have failed to observe recognized police procedures. A number of cases have noted this fact in their analyses, but those cases yield little support for defendant's position here. *Trombetta,* 467 U.S.

at 488, 104 S.Ct. at 2533; *U.S. v. Webster,* 750 F.2d 307, 333 (5th Cir.1984) (destruction of marijuana in conformity with DEA procedures); *Nesbitt,* 852 F.2d at 1520 (failed attempt to obtain court order for destruction). While it may be conceded as an obvious proposition that general police procedures dictate the collection and preservation of all material evidence, the point of concern in the above cases was compliance with established practices and procedures for the destruction of evidence. However, there is nothing in the record here to indicate that either the Wisconsin Department of Justice or the Sheriff's Department had any policy on the subject, so there can be no real issue of non-compliance. That the United States Department of Justice had a policy (Court Ex. 1) is of no significance at all, since the destruction was conducted solely by state officers well before the federal government was involved in any way. See *United States v. Doty,* 714 F.2d 761, 764 (8th Cir.1983) (subsequent federal prosecution not barred by state agents' failure to comply with state statute requiring a court order prior to destruction).

**13.** There is nothing in the record to suggest the known availability of storage for the entire 700 plants. Nor is there anything to contradict Sheriff Basting's testimony about the security

hundred plants did not take on any significance until the federal government charged defendant under the enhanced penalty provisions. The thirteen plants or plant parts which Dep. Crist collected for evidence purposes were presumably adequate to provide the basis for a prosecution for at least some controlled substances offenses under state law.

This leads to the consideration of the materiality element. In *Youngblood* the Supreme Court emphasized that it was not enough for a defendant to show that the destroyed evidence was exculpatory. Rather, "the exculpatory value of the evidence must be apparent *'before* the evidence was destroyed'.... The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood,* 109 S.Ct. at 336, note (citing *Trombetta,* 467 U.S. at 489, 104 S.Ct. at 2534) (emphasis in original).

The thrust of defendant's materiality argument is that he has been deprived of the opportunity to count, test and identify the plants for which he is being prosecuted. Thus, he contends, he is without the means to challenge the government's secondary evidence. Granting, for purposes of discussion, that the destroyed evidence was potentially exculpatory as to these points, defendant has not demonstrated that the officers were actually aware of its exculpatory value at the time the destruction occurred. The raid was conducted entirely by agents of the State of Wisconsin charged with the enforcement of Wisconsin law. A quantity of marijuana was, in fact, preserved which would have supported a prosecution under state law for the manufacture (Wis.Stats. § 161.41(1)(h)) or the possession with intent to distribute (Wis.

Stat. § 161.41(1)—(h)) a controlled substance with penalties grading up to ten years in prison depending upon the *weight* of the substance. Defendant could also have been prosecuted for misdemeanor possession of marijuana. (Wis.Stats. § 161.-41(3r)) There were, if my review of the Wisconsin Statutes is correct, no penal provisions that measured the gravity of the offense, or the penalty, by the number of plants. It was not until the Iowa County District Attorney declined to prosecute that the case was referred to the federal government and it was not until then that the number of plants became a relevant consideration. This did not occur, of course, until several days after the destruction of the plants, and it follows that the officers did not, and could not reasonably, know of the potential exculpatory value of preserving one hundred of the seven hundred plants.

In light of the foregoing, it is perhaps unnecessary to discuss the final element— whether defendant has "alternate means of demonstrating his innocence." *Trombetta,* 467 U.S. at 490, 104 S.Ct. at 2534. *United States v. Lov–It Creamery, Inc.,* 704 F.Supp. 1532, 1549 (E.D.Wis.1989). However, defendant's claim must fail on this point as well. It will be the government's burden to prove beyond a reasonable doubt that there were, in fact, more than 100 plants and that the plants were marijuana. From the evidentiary hearing it is evident that the government will attempt to do this by reference to the samples preserved by Dept. Crist, the testimony of the officers who observed the field and participated in the harvest, and the contemporaneous video and still photographs.

I find that satisfactory, alternative means do exist for challenging the government's proof. First, defendant has the opportunity to examine and conduct its own

---

concerns and the problems with fumes, spoilage, and rodents which attend the storage of large quantitites of freshly cut plants. These are valid concerns which tend to negate an implication of bad faith.

  Given the infeasibility of retaining such a large quantity of marijuana for any lengthof time, as well as the fact that samples were

taken for testing and proof of the plants' status as contraband, we are unwilling to attribute any bad faith to the officers' action. *United States v. Doty,* 714 F.2d 761, 764–765 (8th Cir.1983). See also, *United States v. Nesbitt,* 852 F.2d 1502, 1520 (7th Cir.1988) (chemicals destroyed in mistaken belief they were dangerous).

tests on the plant samples and to examine and analyze the film evidence. *United States v. Webster,* 750 F.2d 307, 334 (5th Cir.1984), *cert. denied,* 471 U.S. 1106, 105 S.Ct. 2340, 2341, 85 L.Ed.2d 855, 856 (1985). At trial, defendant will have the opportunity to challenge, by direct expert testimony and cross examination, the accuracy and sufficiency of the pictorial evidence to establish either the number or character of the plants shown, just as he did at the evidentiary hearing. He will also be able to cross examine the participating agents as to the conduct of the raid, the circumstances of the destruction of the plants, and their ability to identify the various species of marijuana in their various stages of growth. *Id.; United States v. Doty,* 714 F.2d 761, 765 (8th Cir.1983). Thus it seems clear that, as in *Trombetta,* 467 U.S. at 490, 104 S.Ct. at 2534, defendant is "perfectly capable of raising these issues" of quantity and identification of the plants without resort to the plants themselves. In addition to these points, defendant can also argue to the jury that the preservation of all the plants would have been exculpatory. *Youngblood,* 109 S.Ct. at 335; *United States v. Lov–It Creamery, Inc.,* 704 F.Supp at 1549. It is as likely as not that defendant will profit more from the destruction of the evidence than he would have from its preservation, given the very high probability that the evidence would have been inculpatory if it had been preserved.

■ There is another, entirely separate, basis for denying defendant's motion. As previously noted, no federal agent or prosecutor was involved in any way in the investigation of this case or the destruction of the marijuana. Indeed, no federal prosecution was even considered until after the destruction, and the federal prosecutor was not approached until the Iowa County District Attorney declined to act. In such circumstances, absent any suggestion of collusion or culpability on the part of the federal authorities, courts have ordinarily declined to penalize the subsequent federal prosecution. *United States v. Baca,* 687 F.2d 1356, 1360 (10th Cir.1982) (destruction of heroin pursuant to state court order prior to return of federal indictment); *United States v. Doty,* 714 F.2d 761, 764 (8th Cir.1983) and cases cited.[14] The reason for this reluctance is clear. Federal courts and prosecutors have greater supervisory control and authority over the actions of federal than state officers. See *United States v. Loud Hawk,* 628 F.2d 1139, 1152 (9th Cir.1979) (Kennedy, J., concurring). As the Court of Appeals has pointed out in a related context, "other sanctions already exist to control the conduct of state officers." *United States v. D'Antoni,* 874 F.2d 1214, 1219 (7th Cir. 1989) (citing *United States v. Rickus,* 737 F.2d 360, 364 (3d Cir.1984), *cert. denied,* 424 U.S. 921 (1985). See also *United States v. Gervasi,* 562 F.Supp. 632, 645–646 (N.D.Ill.1983).[15] Moreover, where the evidence is destroyed before the federal prosecutors can examine it, the government is as likely to be deprived of inculpatory evidence as the defendant is of exculpatory evidence. *See United States v. Johnston,* 543 F.2d 55, 57 (8th Cir.1976). In all probability that is what has happened in this case.

For the foregoing reasons, it will also be recommended that defendant's motion to dismiss the indictment be denied.

## RECOMMENDATION

IT IS RESPECTFULLY RECOMMENDED, pursuant to 28 U.S.C. § 636(b)(1)(B), that defendant's motion to suppress and motion to dismiss be DENIED.

ENTERED this 25th day of May, 1989.

---

**14.** In *Doty* the facts were virtually identical to the instant case. Marijuana was burned by state agents at the time of the search.

**15.** This does not imply any erosion of the federal standards for the admissibility of evidence. *United States v. D'Antoni* at 1219.