790 P.2d 385

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Anthony Eugene WIGHT, Defendant–Appellant.**

**Nos. 17774, 17538.**

Court of Appeals of Idaho.

April 6, 1990.

Alan E. Trimming, Ada County Public Defender and Timothy L. Hansen, Deputy Public Defender, argued, Boise, for defendant-appellant.

Jim Jones, Atty. Gen., and Michael J. Kane, Deputy Atty. Gen., argued, Boise, for respondent.

GOFF, Judge, Pro Tem.

Anthony Wight was convicted in the district court for Ada County of possession of a controlled substance with intent to deliver, possession of drug paraphernalia and concealing a dangerous weapon. I.C. §§ 37–2732, –2734A, 18–3302. For these offenses, Wight received unified sentences totaling ten years, with a five-year minimum period of confinement. On appeal, Wight contends that the police lacked probable cause to arrest and search him, that the district judge erred in denying his motion to strike any reference at trial to evidence lost by the state, and that his sentence is excessive. We affirm.

The facts pertinent to this appeal are as follows. On the evening of December 14, 1987, three detectives from the Boise City Police Department were conducting a mo-

bile surveillance of Wight, who was a passenger in a pickup driven by his wife, Lori. During the surveillance one of the officers, Webb, observed Lori Wight drive the vehicle onto the curb while making a right-hand turn. Webb pursued the Wights' vehicle, which accelerated down the street and then pulled over and parked on an adjacent side street. Webb stopped his automobile at the intersection of the two streets and continued his observation of the Wights' vehicle. After a short while, Lori Wight turned her vehicle around and proceeded back to the intersection without turning on her headlights.

Based upon his observations, Webb informed the other detectives that he wished to stop Lori Wight for committing several traffic violations. When Webb pulled alongside the Wights' vehicle and motioned Lori Wight to pull over, she suddenly pulled away from the intersection and accelerated rapidly down the street. During the ensuing chase, Webb observed Wight look back in the direction of his vehicle and then lean over in his seat as though, in Webb's estimation, he was "retrieving a weapon." Webb based this conclusion on his past experience in surveillance, and upon his knowledge that Wight had recently been arrested with a concealed weapon on his person.

A short time later, Lori Wight pulled her vehicle over to the side of the road. Webb then ordered the Wights to get out of the pickup and to place their hands on the vehicle's hood. Wight refused to do so; rather he shouted at the officers and kept his left hand over the bulging pocket of his coat. Concerned for his safety, Webb repeated his order, but Wight again failed to respond. Webb attempted to physically place both of Wight's hands on the hood of the vehicle. Wight resisted, pushing against Webb and momentarily causing him to lose his balance. Webb placed Wight under arrest for obstructing and delaying an officer in the discharge of his duties. I.C. § 18–705.

Incident to this arrest, Webb searched Wight, finding a loaded .38 caliber magazine and bullets in the pocket of Wight's jacket, along with several plastic bindles of methamphetamine, some syringes and a small piece of paper which the detective later identified as a drug ledger. A subsequent search of the couple's vehicle revealed a loaded .38 caliber semi-automatic pistol found underneath the passenger's seat and a small tin canister which also contained methamphetamine.

Prior to trial, Wight filed a motion to suppress all evidence obtained during the search of his person and the vehicle on the night of his arrest. The trial judge denied the motion. During the trial, it was discovered that the tin canister found in the vehicle was missing from the state's evidence envelope. Wight moved unsuccessfully to have any reference to the tin and its contents stricken from the record. The jury subsequently found Wight guilty on all three counts charged. The judge sentenced Wight to a unified sentence totaling ten years. The district judge denied Wight's motion for reconsideration of his sentence. This appeal followed.

I

Wight submits the trial judge erred in denying his motion to suppress the evidence seized from his person and from the interior of the vehicle at the time of his arrest. Wight contends the police lacked reasonable suspicion to make the traffic stop and order him to exit the vehicle; further, that the police lacked probable cause to arrest him for obstructing and delaying. Wight asserts that evidence taken from his person and from the vehicle was done in violation of his right to be free from unreasonable search and seizure. U.S. Const. amend. IV, XIV; Idaho Const. art. 1, § 17. Determining what is a reasonable arrest or search is a question of law on which we exercise free review; however, we will defer to the trial judge's findings of fact pertinent to this issue unless those findings are clearly erroneous. *See State v. Bainbridge*, 117 Idaho 245, 787 P.2d 231 (1990); *State v. Heinen*, 114 Idaho 656, 759 P.2d 947 (Ct.App.1988) (review denied).

A warrantless search is presumptively unreasonable unless it falls within certain specific and well-delineated exceptions. *State v. Woolery*, 116 Idaho 368, 775 P.2d 1210 (1989). Among these exceptions is a search incident to a lawful arrest. *See Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *State v. Law*, 115 Idaho 769, 769 P.2d 1141 (Ct.App. 1989) (review denied). The scope of such a search may include the individual's person, as well as the passenger compartment of the vehicle in which he or she is riding. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *State v. Law, supra.* However, as a predicate to conducting the search, the police must make a lawful arrest. *See State v. Law, supra* (police had reasonable suspicion to conduct a vehicle stop and then had authority to arrest defendant on outstanding warrant).

Based upon our review of the record we conclude that the seizure of evidence from Wight and from the interior of the vehicle was pursuant to a constitutionally permitted search incident to a lawful arrest. The record indicates the police had a valid reason for stopping the vehicle driven by Lori Wight; she had committed several traffic infractions while attempting to elude the detectives' surveillance. *See Matter of Griffiths*, 113 Idaho 364, 744 P.2d 92 (1987), (traffic offenses give police probable cause to stop vehicle). It was then within the detectives' authority to order Wight and his wife to exit the vehicle, and to conduct a "pat-down" search of the couple, if the officers had a reasonable suspicion that either Wight or his wife was armed and dangerous. *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). Here, the detectives had a reasonable suspicion that Wight was armed. Webb testified at Wight's suppression hearing that he was concerned for his safety and the safety of the other detectives at the time of the vehicle stop due to his observation of Wight during the pursuit of the couple's vehicle. Although Wight argues the movements which Webb observed Wight make in the vehicle were not, in themselves, sufficient grounds for such concern, *see, e.g., People v. Mestey*, 61 A.D.2d 447, 402 N.Y.S.2d 577 (1978), we conclude that the detective's observations, coupled with his knowledge that Wight had been carrying a weapon during a previous arrest, were sufficient grounds for the detective to order the pat-down search.

We are convinced Webb also had probable cause to arrest Wight for obstructing and delaying. At the time of the stop, Wight was aware that Detective Webb was attempting to discharge his duties by citing Lori Wight for committing various traffic violations. Wight refused to obey Webb's order to keep his hands in plain view, away from the bulge in the pocket of his jacket, and he continued to shout at the detectives in a threatening manner. In attempting to pat down Wight, Webb used reasonable force to place Wight's hands on the hood of the vehicle. Wight's reaction in pushing the officer constituted sufficient grounds to arrest him for obstructing and delaying. The subsequent search of Wight's person and the passenger compartment of the vehicle was permissible as a valid search incident to Wight's lawful arrest. *See State v. Law, supra.* The stop, arrest and search were constitutionally valid; therefore, we affirm the denial of Wight's suppression motion.

## II

Next, we address Wight's assertion that the district judge erred in denying Wight's motion to strike any reference to the tin canister and its contents at trial. Before the trial, Wight filed a timely motion with the prosecution to disclose material information in the prosecutor's possession which would "tend to negate guilt." I.C.R. 16. During trial, Wight denied knowledge and possession of the tin and its contents. Based on this defense, Wight stipulated to the chain of custody of the tin and its contents as methamphetamine. In addition, the prosecutor submitted evidence regarding custody of the tin and a laboratory analysis of its contents. During testimony, it was discovered that the state's evidence envelope did not contain

these items, and that the prosecutor knew the items were missing prior to trial. As a result, Wight moved to strike any reference to the tin or its contents.

In opposition to Wight's motion, the prosecutor called the court clerk as a witness. The clerk testified that approximately two weeks prior to trial, she and the prosecutor examined the contents of the envelope and that after the examination, she placed the envelope back in the court vault. She also stated that later the same day, she found a tin on the floor similar to the one the officer found in the interior of the vehicle at the time of Wight's arrest. Not recognizing the tin as evidence, and believing that the tin had been dropped on the floor by a recent visitor to the clerk's office, the clerk disposed of the tin. Based upon these facts, the district judge denied Wight's motion.

Wight now contends that the district judge abused his discretion in denying the motion to strike reference to the tin. He alleges the prosecutor's failure to disclose the missing tin prior to trial was material to his defense and prejudiced his ability to defend the charges against him. Wight submits that, without the tin, the state would not have been able to prove he possessed a sufficient quantity of methamphetamine to warrant an inference that he possessed with an intent to deliver.

We disagree. Due process requires that the accused must be informed of *exculpatory* information within the prosecutor's possession. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Paradis v. State,* 110 Idaho 534, 716 P.2d 1306 (1986). Failure to do so may constitute an abridgement of the defendant's due process rights under the fourth and fourteenth amendments of the United States Constitution, and article 1, § 13 of the Idaho Constitution. *See Paradis v. State, supra.* However, this protection does not extend to *inculpatory* evidence; the prosecution is not compelled to volunteer all information which may assist the defense in preparing for trial. *State v. Horn,* 101 Idaho 192, 610 P.2d 551 (1980); *State v. Simons,* 112 Idaho 254, 731 P.2d 797 (Ct.

App.1987) (review denied). In this case, loss of the tin and its contents was not, strictly speaking, an exculpatory fact. However, even if we take the view that it was exculpatory in the broad sense of being a fact material to the defense, we still conclude that the lack of pretrial disclosure did not oblige the trial court to strike any reference to the items.

Wight's motion to strike was really grounded not upon untimely disclosure but upon the loss of evidence. When reviewing claims regarding the loss or destruction of inculpatory evidence, the Idaho Supreme Court has adopted a standard employing a case-by-case assessment of whether the defendant was denied a fair trial due to omission of such evidence. *See Paradis v. State, supra.* Relying on the decision of the Tenth Circuit in *United States v. Baca,* 687 F.2d 1356 (10th Cir.1982), the Court in *Paradis* reiterated that a test should focus upon both the fault of the government and the prejudice to the defendant when inculpatory evidence is lost or destroyed. *Paradis v. State,* 110 Idaho at 541, n. 6, 716 P.2d at 1313, n. 6, *citing United States v. Baca,* 687 F.2d at 1359, n. 1. The Court went on to state that the analysis should weigh the government's culpability for the loss, together with a realistic appraisal of its significance when viewed in light of its nature, its bearing upon critical issues in the case and the strength of the government's untainted proof. *Id.*

In the present case, we conclude that Wight was not denied a fair trial due to the prosecutor's failure to notify him of the lost evidence. Based upon the testimony of the court clerk, disposal of the tin and its contents was not the result of any wrongdoing or bad faith on the part of the state. Rather, it was merely an inadvertent act by the clerk. In addition, although we find disposal of the tin material to Wight's defense, we fail to see any prejudice resulting from its omission. Contrary to Wight's assertion, the prosecutor could have established existence of the tin and methamphetamine through independent testimony. Even though the tin was not available as evidence, the prosecutor could have produced witnesses who would have

testified to the chain of custody of the tin, as well as the state chemist who could have testified to the tin's contents. Wight's contention ignores the existence of other relevant evidence produced at trial, most notably the drug ledger retrieved from his person which tended to prove his intent to distribute the methamphetamine found at the time of his arrest. Under these circumstances, lack of independent verification of the tin alone was not enough to demonstrate prejudice. *See United States v. Baca, supra.* We therefore conclude that the district judge did not err in denying Wight's motion to strike reference to the tin canister and its contents at trial.

### III

Finally, we address Wight's claim that his sentences are excessive. Wight's primary contention is that the district judge in ruling on his motion for reconsideration of sentence failed to consider his changed attitude toward drug rehabilitation. Wight's presentence report indicates that he has engaged in criminal activity for a substantial period of time. He had a juvenile record for battery. His adult record shows that he was charged with committing four forgeries; that he pled guilty to one charge and the other three were dismissed. He received a withheld judgment and was placed on probation. That probation was revoked when Wight was later convicted of two more forgeries. He was then sentenced to the Idaho State Board of Correction under the one hundred twenty-day retained jurisdiction program. Within three months of his release from the penitentiary on probation, he was returned to the penitentiary for a probation violation. While in the penitentiary he completed the Drug and Alcohol Education Program. Wight also received seven disciplinary action dispositions while at the penitentiary. Two months before the crimes occurred that gave rise to this appeal, Wight had been arrested with a concealed weapon on his person.

Having reviewed the full record and having considered the sentence review criteria set forth in *State v. Toohill,* 103 Idaho 565,

650 P.2d 707 (Ct.App.1982), and in *State v. Sanchez,* 115 Idaho 776, 769 P.2d 1148 (Ct. App.1989), we conclude that the district judge did not abuse his discretion in imposing the sentences or in denying Wight's motion. Accordingly, Wight's judgment of conviction, including the sentences, is affirmed.

WALTERS, C.J., and BURNETT, J., concur.