**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**V–1 OIL COMPANY, d/b/a V–1 Propane,**
**Defendant–Appellant.**

**No. 94–36178.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 18, 1995.

Decided Aug. 24, 1995.

Peter Stirba, Stirba & Hathaway, Salt Lake City, UT, for defendant-appellant.

John F. Daly, U.S. Dept. of Justice, Jonathan Kaplan, U.S. Dept. of Transp., Washington, DC, for plaintiff-appellee.

Before: FARRIS, NOONAN, Jr., and HAWKINS, Circuit Judges.

Opinion by Judge FARRIS; Dissent by Judge NOONAN.

FARRIS, Circuit Judge:

The principal question is whether warrantless, unannounced inspections under the Hazardous Materials Transportation Act violate V–1's Fourth Amendment rights. We hold that they do not and affirm.

## I. FACTS

V–1 Oil Company is a liquefied propane gas retailer in six western states. It receives propane gas by rail from Canadian distributors. Although V–1 does not own the rail cars, V–1's employees unload and transfer the propane shipments to the company's storage tanks. V–1's employees then return the empty rail cars to the distributors.

Congress enacted the Hazardous Materials Transportation Act ("HMTA") in 1975. The Act gives the Secretary of Transportation extensive authority to regulate the transportation and handling of hazardous materials. As part of the Secretary's authority, he may conduct warrantless, unannounced inspections of property or records that involve the transportation of hazardous materials. The statute and regulations provide that inspections must be conducted at reasonable times and in a reasonable manner. The Secretary has delegated oversight responsibility for all transportation by rail to the Federal Railroad Administration ("FRA").

In 1990 an FRA inspector attempted to inspect V–1's facility in Idaho Falls. V–1 denied permission for the inspection unless the inspector complied with V–1's safety policies. V–1 required all government inspectors to fill out its "Form 130." The form asks for the inspector's name, title, and agency; the reason or purpose for the visit; the statutory or other authority for the inspection or visit; and the inspector's qualifications and experience. If V–1 approves, it then schedules an inspection for a time when its business operations will not be interrupted or impeded. FRA sought to inspect V–1's property and records three more times from 1992–93. Each time V–1 refused unannounced inspections.

In August 1993, the United States filed this action under 49 U.S.C.App. § 1810 to enjoin V–1 from preventing inspections. The district court granted the government's motion for a preliminary injunction in January 1994. The parties then submitted cross-motions for summary judgment. The district court again ruled in favor of the government. It concluded that warrantless searches under the HMTA fall within "a well-recognized exception to the warrant requirement for administrative searches of commercial premises employed in a 'closely regulated' industry." V–1 appeals.

## II. DISCUSSION

### A. WARRANTLESS SEARCHES OF V–1 UNDER THE HMTA DO NOT VIOLATE THE FOURTH AMENDMENT

V–1 argues that FRA's warrantless, unannounced searches violate the Fourth Amendment. In *New York v. Burger*, 482 U.S. 691, 702–03, 107 S.Ct. 2636, 2643–44, 96 L.Ed.2d 601 (1987), the Supreme Court held that warrantless searches of closely regulated industries do not violate the Fourth Amendment if 1) the underlying regulatory scheme advances a substantial government interest, 2) the warrantless inspection program is necessary to further the regulatory scheme, and 3) the program provides a "constitutionally adequate substitute for a warrant."

■ The district court properly concluded that V–1 is a closely regulated industry because it transports and sells hazardous materials. V–1 admits that it is regulated by 331 state and federal agencies. Nevertheless, it argues that it is not part of the railroad industry and is not pervasively regulated by FRA. We reject the argument. V–1's privacy expectations are not necessarily triggered by the particular agency conducting the search. V–1 has a reduced expectation of privacy because it transports, stores, and sells propane gas. The Fourth Amendment exception applies to "certain *industries*" regardless of the agency that has oversight jurisdiction. *See Marshall v. Barlow's, Inc.,*

436 U.S. 307, 313, 98 S.Ct. 1816, 1820–21, 56 L.Ed.2d 305 (1978) (emphasis added) (stating that "[c]ertain industries have such a history of government oversight that no reasonable expectation of privacy ... could exist for a proprietor over the stock of such an enterprise").

■ The first two prongs of the *Burger* test are easily satisfied. The government has a substantial interest in regulating the transportation and temporary storage of hazardous materials to protect life and property. Also, unannounced inspections reasonably ensure that the statute is satisfactorily enforced. *See United States v. Biswell,* 406 U.S. 311, 316, 92 S.Ct. 1593, 1596, 32 L.Ed.2d 87 (1972) (stating that "if inspection is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential"). Advanced notice of inspections could permit V–1 to temporarily correct violations and frustrate enforcement efforts. *See id.*

■ Under the third prong of the *Burger* test, a statute's inspection program constitutes an adequate substitute for a warrant if the owner of commercial property knows that his property will be subject to periodic inspections undertaken for specific purposes, and if the inspection program is limited in time, place, and scope. *Burger,* 482 U.S. at 703, 107 S.Ct. at 2644. V–1 alleges that the statute does not satisfy the third prong because it "applies to everyone in interstate commerce who uses any [hazardous materials]." V–1 also asserts that the scope of searches by FRA is "unlimited."

We have carefully considered V–1's arguments. The statute, as applied to V–1, provides an adequate substitute for a warrant. The HMTA satisfactorily notifies the types of businesses subject to inspection. 49 U.S.C.App. § 1808(c)[1] provides:

> The Secretary may authorize any officer, employee, or agent to enter upon, inspect, and examine, at reasonable times and in a

reasonable manner, the records and properties of persons to the extent such records and properties relate to—

> (1) the manufacture, fabrication, marking, maintenance, reconditioning, repair, testing, or distribution of packages or containers for use by any person in the transportation of hazardous materials in commerce; or

> (2) the transportation or shipment by any person of hazardous materials in commerce.

V–1 is subject to inspections by the FRA only because of its extensive activities relating to the transportation of propane gas. V–1 itself unloads the propane from the rail cars into its storage facilities. The Act applies to the process of unloading rail cars filled with hazardous materials. 49 C.F.R. § 174.67. V–1 then returns the rail cars to the original shipper. Because they contain residual amounts of a hazardous material, V–1 must seal and mark the rail cars, and document their return. 49 C.F.R. § 173.29. These activities provide adequate notice to V–1 that its property and records "will from time to time be inspected by government officials." *United States v. Kaiyo Maru No. 53,* 699 F.2d 989, 995 (9th Cir.1983).

■ The statute also limits the discretion of inspecting officers. The permissible scope of these searches is narrowly defined to business premises and records that relate to the transportation of hazardous materials. *See Burger,* 482 U.S. at 711, 107 S.Ct. at 2648 (noting that the New York statute limits the scope of inspections to records and vehicles on the business premises). HMTA's regulations "set[ ] forth the scope of the inspection and ... places the operator on notice as to how to comply with the statute." *See id.* Finally, FRA inspections may be conducted only at reasonable times and in a reasonable manner. FRA's enforcement manual requires inspections to be conducted during normally assigned office hours unless the

1. After the parties submitted their cross-motions for summary judgment, Congress repealed and replaced the relevant statutory provisions as part of a broad recodification of federal transportation laws. 49 U.S.C. §§ 5101–5127. We note that the recodified provisions "may not be construed as making a substantive change in the laws replaced." Pub.L. No. 103–272, § 6(a), 108 Stat. 1378. The recodified provisions, however, do not apply to "proceedings that were begun before the date of enactment of this Act." Pub.L. No. 103–272, § 7(b), 108 Stat. 1379.

inspector has previously notified his Regional Specialist. *See id.* (noting that "officers are allowed to conduct an inspection only 'during [the] regular and usual business hours'"). We may examine established agency policy when considering the discretion of inspecting officers. *Kaiyo Maru No. 53*, 699 F.2d at 996 n. 17.

## B. PERMANENT INJUNCTIVE RELIEF

 V–1 argues that permanent injunctive relief is inappropriate for two reasons. First, it asserts that the injunction is not sufficiently specific to satisfy Federal Rule of Civil Procedure 65(d). Rule 65(d) provides that injunctions "shall be specific in terms [and] shall describe in reasonable detail ... the act or acts sought to be restrained." We will not set aside injunctions under Rule 65(d) "unless they are so vague that they have no reasonably specific meaning." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1297 (9th Cir.1992).

The district court's injunction requires V–1 to allow warrantless administrative searches "for the purpose of enforcing the [HMTA] and its implementing regulations." This language is not ambiguous. The injunction cannot reasonably be construed as permitting searches that would otherwise be prohibited. V–1 has legal remedies available if FRA engages in improper searches.

 V–1 also argues that the requirements for a permanent injunction have not been satisfied. We review the grant of a permanent injunction for abuse of discretion. *Multnomah Legal Services Workers Union v. Legal Services*, 936 F.2d 1547, 1552 (9th Cir.1991). The district court's injunction merely provides that V–1 must permit FRA to administer the HMTA. The statute is constitutional. A permanent injunction permitting the enforcement of a statute that meets constitutional muster is not an abuse of discretion.

AFFIRMED.

NOONAN, Circuit Judge, dissenting.

The Fourth Amendment is peremptory: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." The Amendment then prescribes the conditions under which search warrants shall issue. It is axiomatic that a properly-issued search warrant is the way a government normally complies with the Amendment's prohibition of an unreasonable search. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). It is equally axiomatic that a business is included among "the people" whose right the Amendment safeguards. *See v. City of Seattle*, 387 U.S. 541, 543, 87 S.Ct. 1737, 1739, 18 L.Ed.2d 943 (1967).

To the rule requiring a warrant as the guarantee of reasonableness, courts have fashioned exceptions, among them the exception invoked here where "'the statute's inspection program, in terms of the certainty and regularity of its application [provides] a constitutionally adequate substitute for a warrant.'" *New York v. Burger*, 482 U.S. 691, 703, 107 S.Ct. 2636, 2644, 96 L.Ed.2d 601 (1987), quoting *Donovan v. Dewey*, 452 U.S. 594, 600, 101 S.Ct. 2534, 2538–39, 69 L.Ed.2d 262 (1981).

Nothing in the statute at issue assures a program that will have "certainty and regularity" in its application. By regulation, there are over 2,000 hazardous materials. 49 C.F.R. § 172.101, "Hazardous Materials Table." The table listing the materials runs for 240 pages in the regulation. The list begins with "Accellerene," proceeds to "Aerosols" (corrosive, flammable, non-flammable, and poison), goes on to "Air bag inflators", continues through "Batteries" (dry and wet), through "Carbon dioxide or Dry ice", through "Dyes" (liquid or solid), through "Extracts, flavoring, liquid," and so on. The list even includes "Matches, safety" and "Wheelchairs, electric". No doubt every one of the listed materials can be hazardous in some use. The businesses involved in manufacturing, fabricating, marking, maintaining, reconditioning, repairing, and testing of packages or containers for use in the transportation of such materials must be legion. The list of the materials is so long and so many businesses must be involved in the transportation of the materials in commerce that no business within the enumerated cate-

914

gories could be sure if it would ever be visited by inspectors. If certainty and regularity are the constitutional substitutes for a warrant, they are, by the very nature of the broad swatches of business regulated, absent.

As applied to V–1 the statute is equally lacking in certainty and regularity. From January 1, 1975 to November 1, 1990 the Federal Railroad Administration had never inspected or attempted to inspect V–1's premises. This large fact alone destroys any claim of certainty and regularity in the program commanded by the statute. After November 1, 1990 there was one attempted inspection and three inspections made possible by the Preliminary Injunction while this case was being appealed. These four instances fail to establish certainty and regularity of inspection over the past twenty years. To the contrary, the evidence shows great uncertainty, great irregularity, and a long period in which no inspection was even attempted.

The court meets this evidence by accepting an allegation in V–1's brief, that V–1 is subject to regulation by 331 state and federal agencies. To be sure, it is a regulated business. But there is no evidence that the kinds of regulations to which it is subject are a substitute for a search warrant. The exception to the Fourth Amendment created by the Supreme Court holds where the statute being applied, not some other statute, is a constitutional substitute for a search warrant. The dicta from *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313, 98 S.Ct. 1816, 1820–21, 56 L.Ed.2d 305 (1978) are clearly qualified by the standard laid down in *Donovan* and *Burger*: there has to be "a constitutionally adequate substitute for a warrant," and that substitute must be the statute being enforced. The court proceeds as if applying the rule set out in Scripture: "To him who has it shall be given, and as to him who does not have, even that he thinks he has shall be taken from him." *Luke* 8:18. However true as a rule of spiritual life, this maxim seems an inadequate principle for interpreting a constitutional right. Heavily regulated a business may be; it is entitled to be secure in the privacy which remains to it.

The curious argument is made by the government, and accepted by the court, that the warrantless inspections are necessary because surprise is important for enforcement. Surprise inspections are, by definition, irregular and uncertain, just the opposite of what is constitutionally the equivalent of a warrant. The asserted need of such inspections suggests that government is seeking to obtain by the equivalent of the detested general warrant what is only available to it constitutionally on a showing of probable cause.

In *See v. Seattle* the routine, periodic, citywide check of commercial establishments to assure compliance with the city's fire code was held not to justify the fire chief's warrantless attempt to enter a warehouse. *See,* 387 U.S. 541, 546, 87 S.Ct. 1737, 1741, 56 L.Ed.2d 305. The requirements of the Fourth Amendment were upheld even though it was a matter of record that warrantless administrative inspections discovered thousands of hazardous violations in major American cities. *Id.* at 551, 87 S.Ct. at 1743–44 (dissent). I fail to see how the Federal Railroad Administration's mission is more serious than a city fire chief's, or how its sporadic visitations are a better substitute for a warrant than the fire chief's routine checks.

Courts have been careful to preserve the Fourth Amendment on behalf of criminals and criminal enterprises by enforcing an extra-constitutional rule of suppressing evidence obtained in violation of its guarantee. *Weeks v. United States*, 232 U.S. 383, 394, 34 S.Ct. 341, 345, 58 L.Ed. 652 (1914); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The judgment has been made that the loss in efficiency of the criminal justice system is more than compensated by the efficacy given the Amendment. At least an equal zeal to uphold the constitutional command is appropriate when an administrative agency of government seeks randomly to rummage through the records of a lawful business. The consequences of unwarranted intrusion by the government are heavier for the criminal; the affront to privacy is equal, whether the government's purpose is criminal law enforcement or civil regulation. In either case "the people"—that is, all of us—

are no longer secure in the possession of the premises and papers that are guaranteed against unreasonable search.

I respectfully dissent.