Nelson LIEVESLEY, d/b/a Nel's
Trucking, Plaintiff,

v.

COMMISSIONER OF INTERNAL
REVENUE, Defendant.

No. CIV. A. 96–12455–WGY.

United States District Court,
D. Massachusetts.

Nov. 14, 1997.

Nelson Lievesley, Fall River, MA, pro se.

Gerald C. Miller, U.S. Dept. of Justice, Tax Div., Washington, DC, for C.I.R.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

Nelson Lievesley ("Lievesley"), acting *pro se*, commenced this declaratory judgment action against the Commissioner of Internal Revenue ("Commissioner") alleging that section 4083(c) of the Internal Revenue Code is unconstitutional as applied to him.[1] He moves for summary judgment on the grounds that section 4083(c) was applied to him in such a way as to violate the Fourth Amendment's prohibition against unreasonable search and seizure.

## I.  Introduction

The following facts are undisputed for purposes of this motion. Lievesley is the owner and operator of a diesel-powered truck which is required to use fuel upon which a federal tax has been paid. On or about August 8, 1996, Lievesley was delivering stone to the Rochester Bituminous asphalt plant in Waltham, Massachusetts. The Internal Revenue Service ("IRS") had set up a diesel fuel inspection site at the asphalt plant. The IRS conducts diesel fuel inspections by withdrawing a sample of diesel fuel from a truck's fuel tank for examination for the absence or presence of red dye. Presence of red dye indicates untaxed diesel fuel. An IRS Diesel Compliance Officer ("Diesel Officer") attempted to have Lievesley stop his truck on the premises of the asphalt plant so that the Diesel Officer could conduct the diesel fuel test. Lievesley drove away without stopping. In accordance with section 4083(c)(3) of the Internal Revenue Code, Lievesley was fined a $1000 penalty for refusing to allow a diesel fuel inspection.[2]

---

1. Section 4083(c)(1)(B) authorizes the Secretary to "detain" ... "any container which contains or may contain any taxable fuel." 26 C.F.R. § 48.4083–1(c)(2) provides that "[o]fficers or employees may detain any vehicle, train, or boat for the purpose of inspecting its fuel tanks...."

2. Later, the IRS later voluntarily agreed to abate the penalty. A levy which had been imposed on Lievesley's funds was released on February 25, 1996. There is no dispute that Lievesley has standing to press this case. *See Berner v. Delahanty, II*, 129 F.3d 20, 23–24 (1st Cir.1997). He continues in business apparently servicing the

Section 4083(c) authorizes the Secretary of the Treasury "to enter any place at which taxable fuel is produced or is stored" for the purposes of "taking and removing samples of such fuel and detain, for [these] purposes ... any container which contains or may contain any taxable fuel." The statute further permits the Secretary to establish inspection sites for these purposes and sets a $1,000 penalty for refusal to permit the inspection. §§ 4083(c)(2),(3). Section 7606 of the Internal Revenue Code allows entry of premises where any articles subject to tax are kept for the purpose of examining the taxable articles. Treasury regulations authorize detaining a vehicle for the purpose of inspecting its fuel tanks and storage tanks on the premises under inspection or at a designated inspection site, and for removal of samples to determine the composition of the fuel. 26 C.F.R. § 48.4083–1(c)(1–3).

## II. Analysis

Lievesley raises an issue that merits serious analysis. The Commissioner argues that the section 4083(c) fuel inspection provisions do not implicate Fourth Amendment concerns at all and, in the alternative, even if the Fourth Amendment governs the section 4083(c) procedures, these provisions, as applied to Lievesley, do not constitute an "unreasonable" search and seizure.

### 1. *The sweep of the Fourth Amendment.*

The Commissioner relies on two theories to support his assertion that a demand to produce taxable diesel fuel for examination to determine whether or not the tax has been paid does not implicate the Fourth Amendment. First, he argues that one cannot have a privacy expectation in diesel fuel as it is an article in "plain view". Second, he claims that the owner of taxable articles who carries or uses such articles on the public ways must expect a possible examination of such articles so long as such inspection requires but a minimal disruption of normal activities.

Objects which are in plain view may be examined by agents of the government without implicating any Fourth Amendment concerns because there is no reasonable expectation of privacy in items left out in the open. As applied to cars and trucks upon the public ways, the Supreme Court has determined that the examination of the exterior of a car or truck does not constitute a "search" as it is "thrust into the public eye." *New York v. Class,* 475 U.S. 106, 114, 106 S.Ct. 960, 966, 89 L.Ed.2d 81 (1986) (citing *Cardwell v. Lewis,* 417 U.S. 583, 588–89, 94 S.Ct. 2464, 2468–69, 41 L.Ed.2d 325 [1974]). Federal courts have expanded the plain view doctrine to a "plain sense" doctrine, incorporating objects which come to the government's attention through the senses of smell, sound, and touch. *See Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S.Ct. 2130, 2136–37, 124 L.Ed.2d 334 (1993) (touch), *United States v. Sifuentes,* 504 F.2d 845, 848 (4th Cir.1974) (smell), *United States v. Pryor,* 652 F.Supp. 1353, 1367 (D.Me.1987) (other sensory perceptions), *aff'd,* 960 F.2d 1 (1st Cir. 1992). The Commissioner asserts that the plain sense rule applies to the contents of a diesel fuel tank on a diesel powered vehicle because "indisputable sensory perceptions lead to the undeniable conclusion that the fuel tank of a visibly operating diesel-powered vehicle indeed contains diesel fuel." Def.'s Mem. at 7. While this is certainly a reasonable chain of circumstances, to stretch the already expansive plain view (now plain sense) doctrine to cover this case would expand it beyond all recognition. As the cases just cited make clear, the plain sense rule permits examination of an article only when it is directly perceived by the senses. Application of the plain sense rule to diesel fuel contained in a truck's fuel tank requires direct detection of the fuel, for example, by smelling diesel fumes or touching diesel fuel. On this record, the contents of the fuel tank on Lievesley's truck were not in plain view nor were they plainly sensed.

same clients. The IRS continues to schedule diesel inspections on the premises where diesel truck deliveries are made. In short, the IRS insists on its right to inspect in this fashion and Lievesley just as adamantly insists on his right to

be free of such searches. The Declaratory Judgment Act is designed to explicate the rights of the parties in such circumstances. 28 U.S.C.A. § 2201.

The Commissioner's second theory—that anyone who carries or uses a taxable article such as diesel fuel upon the public ways must be prepared to accommodate the reasonable, minimal disruptions that flow from examination of those articles for tax enforcement purposes—is not sufficiently supported by the case law upon which he relies. The Commissioner relies on the two Supreme Court decisions which together establish the "Colonnade–Biswell" doctrine, viz., an owner of commercial premises in a "closely regulated" industry has a reduced privacy expectation. *New York v. Burger*, 482 U.S. 691, 700–01, 107 S.Ct. 2636, 2642–43, 96 L.Ed.2d 601 (1987) (citing *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 [1970]; *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 [1972]). These cases, however, explore the question of reasonableness under the Fourth Amendment and do not stand for the proposition that inspections within a "closely regulated" industry do not even implicate Fourth Amendment concerns. *See Burger*, 482 U.S. at 702, 107 S.Ct. at 2643–44; *see also Colonnade Catering Corp.*, 397 U.S. at 75, 90 S.Ct. at 776; *Biswell*, 406 U.S. at 317, 92 S.Ct. at 1597. The Commissioner's argument thus fails under this second theory as well.

A third theory, raised in a supplemental brief by the Commissioner following oral argument, is that the possessor of a container, the contents of which can be inferred from its outward appearance, cannot claim an expectation of privacy in the container or its contents. *See United States v. Sylvester*, 848 F.2d 520, 524 (5th Cir.1988) (quoting *Arkansas v. Sanders*, 442 U.S. 753, 764 n. 13, 99 S.Ct. 2586, 2593–94 n. 13, 61 L.Ed.2d 235 [1979]). Lievesley, who cited *Sylvester* at oral argument, and thus apparently tipped the Commissioner's counsel off to its potential significance, presumably believes one cannot infer that a diesel fuel tank will contain untaxed diesel fuel. Lievesley is correct. Post-*Sanders* circuit court decisions suggest that a container's contents may be inferred only from what the container itself reveals, regardless of what the observer "knows" the container contains. *See United States v. Bonitz*, 826 F.2d 954, 957 (10th Cir.1987) (ruling impermissible an inference that a closed, hard plastic case contained a gun but that it might be permissible to infer a soft-sided gun case contained a gun if the case itself revealed the presence of a weapon inside); *see also United States v. Rigales*, 630 F.2d 364, 367–68 (5th Cir.1980) (warrantless search impermissible where the bulge inside a zippered brief case did not resemble a pistol). Given these refinements of the *Sanders* decision, the Commissioner's citation of *Sylvester* is inapposite.

Despite the Commissioner's various arguments, the Fourth Amendment applies to diesel inspection procedures under section 4083.

But analysis does not stop here.

### 2. *Reasonableness.*

The ultimate test of a constitutionally sound search is its "reasonableness." *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). Determining what is "reasonable" depends on a balancing of the nature of the privacy interest, the character of the government's intrusion, and the nature of the governmental concern at issue. *Id.* at 651–53, 657–61, 115 S.Ct. at 2390, 2393–94. Lievesley questions the reasonableness of three elements of the IRS diesel fuel inspection program: 1) stopping vehicles fueled by diesel fuel, 2) examining the diesel fuel tanks, and 3) carrying out such examinations on private property.

A brief stop and investigation by a government official is permissible under the Fourth Amendment where the government interest at stake is important, the stop causes a minimal intrusion, and practical alternatives are absent. *United States v. Brignoni–Ponce*, 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975). The Commissioner asserts, without citing any cases directly on point, that the IRS may lawfully implement a broad based roadblock to cull diesel-fueled vehicles from the general flow of traffic. Therefore, the Commissioner reasons, it may implement a procedure far less disruptive to the passenger cars that constitute the bulk of vehicles, such as the fuel inspection site in the instant case. The case law the Commis-

sioner cites permits roadblocks for detection of illegal aliens and inebriated drivers. *See United States v. Martinez–Fuerte,* 428 U.S. 543, 544, 96 S.Ct. 3074, 3076–77, 49 L.Ed.2d 1116 (1976) (illegal aliens); *Michigan Dep't of State Police v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) (sobriety checks). These cases are not necessarily dispositive because they rely on the proposition that vehicles which arouse suspicion may be detained for investigation. *Sitz,* 496 U.S. at 450–51, 110 S.Ct. at 2485–86. Even assuming, arguendo, that the IRS may establish a roadblock, the Commissioner has not identified anything about a diesel-fueled truck (other than the fact it is ipso facto a diesel-fueled truck) that should raise a suspicion that the fuel may be untaxed, thereby justifying detention. The cases cited by the Commissioner merely hold that it is permissible to separate "distinct" vehicles from the mainstream of traffic where the distinctness alone is sufficient justification for further investigation.

Nevertheless, while the Commissioner's argument is unconvincing, the reasonableness of the stop here should be considered against the scope of the special treatment the Supreme Court has granted inspection laws for closely regulated industries. *See, e.g., Colonnade Catering Corp.,* 397 U.S. at 76, 90 S.Ct. at 776–77.

■ Consistent with the Fourth Amendment, reasonable searches of commercial property owned by persons engaged in closely regulated commercial activities may be conducted without a warrant because such persons have lessened expectations of privacy. *See New York v. Burger,* 482 U.S. 691, 702–03, 107 S.Ct. 2636, 2643–44, 96 L.Ed.2d 601 (1987). Even in this context, however, the warrantless search must still meet three criteria: 1) a "substantial" government interest must inform the regulatory scheme pursuant to which the inspection is made; 2) the warrantless searches must be "necessary to further [the] regulatory scheme;" and 3) the statute's inspection program must provide a constitutionally adequate substitute for a warrant in terms of the certainty and regularity of its application. *Id.*

■ Here, the Commissioner fails directly to address any of these three elements, instead relying on the general proposition of reduced privacy expectations within a "closely regulated" industry. Is the trucking industry, however, "closely regulated" within the Supreme Court's meaning? The Commissioner sheds no light on this question. The Supreme Court has found the liquor, firearms, mining, and vehicle dismantling industries to be "closely regulated" for the purposes of warrantless inspections. *Burger,* 482 U.S. at 700–01, 704, 107 S.Ct. at 2642–43, 2644–45; *see also United States v. V–1 Oil Co.,* 63 F.3d 909, 911 (9th Cir.1995) (retail sale of propane gas). Arguably, the trucking industry is "closely regulated" as well. Like the New York junkyard operator in *Burger,* diesel powered truck operators must be licensed; like the junkyard, the truck's registration number must be prominently displayed, and the state imposes extensive regulations. *See Burger,* 482 U.S. at 704, 107 S.Ct. at 2644–45. This Court therefore accepts that the trucking industry is closely regulated.

This Court's ruling that the trucking industry is closely regulated does not conclude the legal analysis; the *Burger* test must still be applied. A "substantial" government interest informing the regulatory scheme pursuant to which a warrantless inspection is made exists where government regulation is in response to theft associated with the industry. *See id.* at 708, 107 S.Ct. at 2646–47. The Commissioner's assertion that Congress enacted section 4083(c) to address a "continuing and widespread" problem of tax evasion by the conversion of non-taxpaid fuel to taxable uses indicates a concern for industry-related theft and is a reasonable administrative interpretation of powers delegated by Congress.

Warrantless searches pursuant to section 4083(c) must be "necessary to further [the] regulatory scheme." *Id.* at 710, 107 S.Ct. at 2648. For diesel fuel inspection just as in the junkyard warrantless inspections, "if inspection is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential. In this context, the prerequisite of a warrant could easily frus-

trate inspection." *Id.* (quoting *Biswell,* 406 U.S. at 316, 92 S.Ct. at 1596).

 A constitutionally adequate substitute for a warrant requires that the inspections be conducted pursuant to a statute that sets the scope of the inspection, determines who is authorized to conduct the inspection and limits the time and place of the inspection. *Id.* at 711, 107 S.Ct. at 2648. The Commissioner correctly asserts that section 4083(c) as written by Congress and applicable regulations as promulgated by the Secretary meet this test. Section 4083 establishes the parameters of the inspection program, section 7606(a) limits inspections to daytime unless the vehicle is being operated at night, and the Diesel Officers authorized to conduct the inspection are identifiable by their hats and credentials which they show to a vehicle operator. Accordingly, this Court rules that the Commissioner has met all three criteria for a warrantless inspection.

Lievesley contends that a diesel-fueled highway vehicle may not be subject to diesel fuel inspection on private property. As the Commissioner asserts, the only applicable constitutional test is that of reasonableness under the Fourth Amendment. Section 4083(c)(2) provides that the Secretary may establish inspection sites for the purpose of carrying out the Secretary's authority. Treasury regulations provide that a designated inspection site is any "location" designated to be used as a fuel inspection site. 26 C.F.R. § 48.4083–1(b)(2). Therefore a location on private property may be designated as a fuel inspection site.

3. *The civil penalty.*

Lievesley further contends that the imposition of a civil penalty for failure to permit examination of diesel fuel by the Internal Revenue Service is unconstitutional. In discussing warrantless inspections, the Supreme Court has determined that Congress may expressly provide for a remedy to apply to those who refuse admission to inspectors conducting an inspection pursuant to a valid federal statute. *Biswell,* 406 U.S. at 314–15, 92 S.Ct. at 1595–96 (discussing *Colonnade* ). The $1,000 penalty Lievesley protests was approved by Congress and ap-

pears in section 4083(c)(3). Having already established the constitutionality of section 4083(c) inspections, it follows that the penalty provided by Congress for refusal to permit such an inspection is lawful.

### III. Conclusion

For the foregoing reasons, Lievesley's motion for summary judgment is *DENIED* and, there being no genuine issue of material fact remaining, it is declared that the stop provided for in section 4083(c)(1)(B) and 26 C.F.R. § 48.4083–1 is consistent with Fourth Amendment requirements for congressionally established inspection schemes, both generally and as applied to Lievesley.

Judgment will enter so declaring.