**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 25 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

———————————————

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

GERALD G. BURCH,

    Defendant - Appellant.

No. 97-3208

———————————————

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 95-40045-01-SAC)**

———————————————

Eric Kjorlie, Topeka, Kansas, for Defendant-Appellant.

Thomas G. Luedke, Assistant United States Attorney (Jackie N. Williams, United States Attorney, with him on the brief), Topeka, Kansas, for Plaintiff-Appellee.

———————————————

Before **LUCERO**, **McKAY**, and **MURPHY**, Circuit Judges.

———————————————

**McKAY**, Circuit Judge.

———————————————

Defendant, Mr. Gerald Burch, was traveling with his wife in a semi-tractor/trailer rig when he was stopped by Kansas Highway Patrolman Brian Smith. A subsequent search of Mr. Burch's commercial vehicle yielded approximately 538 pounds of marijuana. After a jury trial, Defendant was found guilty of conspiring to possess with intent to distribute 538 pounds of marijuana in violation of 21 U.S.C. § 846 and possession with intent to distribute 538 pounds of marijuana in violation of 21 U.S.C. § 841(a)(1).

Defendant argues that the search violated the Fourth Amendment's prohibition on unreasonable searches and, therefore, the district court erred in refusing to suppress the marijuana seized. We review the factual findings of the district court for clear error, and we view the evidence in the light most favorable to the government. See United States v. Botero-Ospina, 71 F.3d 783, 785 (10th Cir. 1995) (en banc), cert. denied, 518 U.S. 1007 (1996). The ultimate determination of the reasonableness of the search and seizure is a question of law that we review *de novo*. See United States v. Ibarra, 955 F.2d 1405, 1409 (10th Cir. 1992).

Trooper Smith's stated reason for stopping Defendant was to conduct a routine safety inspection of Defendant's commercial vehicle pursuant to Kansas law. During the inspection, Trooper Smith requested Defendant collect the necessary commercial vehicle paperwork and accompany him to his patrol car.

When the trooper had reviewed the paperwork to his satisfaction, he returned Defendant's documents and issued Defendant a clean inspection report. After issuing the report and returning the paperwork, Trooper Smith directed Defendant to open the trailer so he could inspect the cargo as authorized by the Kansas statutes governing commercial vehicle inspections. Defendant does not dispute that Trooper Smith's initial stop and search met the constitutional requirements for a valid regulatory search. Defendant asserts that when Trooper Smith issued the inspection report and returned Defendant's paperwork, Trooper Smith abandoned his regulatory search and, therefore, any further search of Defendant's vehicle had to be supported by reasonable suspicion or consent.

"[S]topping an automobile and detaining its occupants constitute a 'seizure'" under the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653 (1979). We evaluate the reasonableness of a traffic stop in two respects: "[F]irst, whether the officer's action was justified at its inception, and, second, whether the action was reasonably related in scope to the circumstances that first justified the interference." United States v. Gonzalez-Lerma, 14 F.3d 1479, 1483 (10th Cir.), cert. denied, 511 U.S. 1095 (1994); see Terry v. Ohio, 392 U.S. 1, 19-20 (1968). There is no dispute that Trooper Smith's action was justified at its inception pursuant to the regulatory search exception to the Fourth Amendment's warrant requirement. See Appellant's Br. at 12; cf. V-1 Oil Co. v. Means, 94

F.3d 1420, 1426 (10th Cir. 1996) ("Motor carriers are closely regulated by both state and federal governments."); United States v. Dominguez-Prieto, 923 F.2d 464, 468-70 (6th Cir.) (holding regulatory search in trucking industry proper), cert. denied, 500 U.S. 936 (1991); Lievesley v. Comm'r of Internal Revenue, 985 F. Supp. 206, 210 (D. Mass. 1997) (holding that the trucking industry is closely regulated); State v. Campbell, 875 P.2d 1010, 1012-13 (Kan. Ct. App. 1994) (noting that motor carriers in Kansas are a pervasively regulated industry). The critical issue is whether the trooper's search of the truck after issuing an inspection report was "reasonably related in scope to the circumstances that first justified the interference." Gonzalez-Lerma, 14 F.3d at 1483.

Kansas Statutes Annotated §§ 66-1,105 through 66-1,142, §§ 66-1302 through 66-1334, and § 74-2108 outline the regulatory scheme that justified the stop and search of Defendant and his truck. Defendant does not dispute that searches pursuant to this statutory authority meet the test for a valid regulatory search set forth in New York v. Burger, 482 U.S. 691, 702-03 (1987).[1] See

---

[1] In Burger, the Supreme Court articulated a three-part test for determining whether a warrantless inspection of a closely regulated industry violated the Fourth Amendment:

First, there must be a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made.

Second, the warrantless inspections must be "necessary to
(continued...)

United States v. Seslar, 996 F.2d 1058, 1061 (10th Cir. 1993). We can therefore

assume without deciding that the regulations of the trucking industry in Kansas

performed the two basic functions of a warrant: They advised Defendant that "the

search [was] being made pursuant to law and ha[d] a properly defined scope" and

they "limit[ed] the discretion of the inspecting officers." Burger, 482 U.S. at 703;

see Seslar, 996 F.2d at 1061. Trooper Smith testified at the suppression hearing

that his reason for inspecting the cargo in the interior of the truck was to check

the blocking and bracing.[2] See R., Supplemental Vol. I at 26, 38, 50, 69, 70.

Such an inspection is authorized by the Kansas Administrative Regulations. See

Kan. Admin. Regs. § 82-4-3; see also 49 C.F.R. §§ 373.100 - 393.106. Since

Trooper Smith's inspection of the interior of the truck was specifically authorized

and limited by the regulatory scheme that "first justified" the stop, the inspection

---

[1](...continued)
further [the] regulatory scheme." . . . .

       Finally, "the statute's inspection program, in terms of the
certainty and regularity of its application, [must] provid[e] a
constitutionally adequate substitute for a warrant."

Burger, 482 U.S. at 702-03 (citations omitted) (quoting Donovan v. Dewey, 452
U.S. 594, 600-603 (1981)).

  [2] To check blocking and bracing, an officer must inspect the interior of a
trailer. Proper blocking and bracing ensures that the cargo is secured "so that,
when the vehicle decelerates at a rate of 20 feet per second per second, the cargo
will remain on the vehicle and will not penetrate the vehicle's front-end structure"
and the cargo is protected against shifting sideways in transit. 49 C.F.R. §
393.104.

passes the "reasonably related in scope" prong of the test unless the issuance of a clean inspection report made the subsequent search unrelated in scope to the authorized inspection of the vehicle. Gonzalez-Lerma, 14 F.3d at 1483.

Although it is hardly model police procedure, we cannot say that issuing a clean inspection report prevented Trooper Smith from completing the regulatory search authorized by Kansas law. The clean inspection report did not remove the trooper's inspection from the scope of actions authorized by "the circumstances that first justified" the stop. Id. When he issued the inspection report and returned Defendant's paperwork, Trooper Smith had not yet completed the inspection authorized by law. Trooper Smith still had not determined, pursuant to the Kansas regulations, that Defendant was operating the truck safely. The stop and inspection were conducted pursuant to a statute that sets the scope of the inspection and authorizes trained and certified officials like Trooper Smith to conduct the inspections. See Burger, 482 U.S. at 711. Because the validity of the regulatory scheme is unchallenged, we can assume that the Kansas statute curtails inspecting officers' individual discretion, notifies commercial carriers like Defendant that they are subject to potential searches, and specifies what can be investigated pursuant to the regulatory scheme. Defendant "[could not] help but be aware that his property [was] subject to periodic inspections undertaken for specific purposes," including inspection of the blocking and bracing. Donovan,

452 U.S. at 600; see Kan. Admin. Regs. § 82-4-3(a)(4); 49 C.F.R. § 393.104. Because Defendant was operating a carrier that is closely regulated, he had a "significantly reduced expectation of privacy" in his trailer. Seslar, 996 F.2d at 1061; see Burger, 482 U.S. at 702. Defendant does not dispute that the regulatory scheme at issue in this case is validated by a state interest that "outweighs the intrusiveness of [the] program of searches or seizures" of commercial carriers. Seslar, 996 F.2d at 1061. Trooper Smith's inspection of the tractor/trailer was within the scope of the safety inspection that he initially stopped Defendant to conduct, and, therefore, "the action was reasonably related in scope to the circumstances that first justified the interference." Gonzalez-Lerma, 14 F.3d at 1483.

We note that the Kansas regulatory scheme does not give officers license to harass commercial carriers or to conduct unreasonable searches. We also emphasize that evidence of a regulatory scheme that circumscribes an officer's discretion by providing that the issuance of a clean inspection report terminates the regulatory search would present a different case. In this case, the record reveals no harassment of Defendant nor any evidence indicating that Trooper Smith conducted his inspection unreasonably. We therefore agree with the district court that the inspection qualifies as a reasonable search under the Fourth Amendment.

Defendant attempts to analogize the significance of the return of documents in a Terry stop or a routine traffic stop to the return of his documents and the issuance of the inspection report in this case. In Terry stops and routine traffic stops, courts have consistently held that undue retention of a defendant's documents renders the encounter nonconsensual. See Florida v. Royer, 460 U.S. 491, 501-03 (1983); United States v. McKneely, 6 F.3d 1447, 1451 (10th Cir. 1993). In a Terry stop or routine traffic stop, an officer's retention of a defendant's documents is significant because it indicates that the defendant, as a general rule, did not reasonably feel free to terminate the encounter and, therefore, the government cannot rely on the defendant's consent to justify further detention, questioning, or a search. See United States v. Lee, 73 F.3d 1034, 1040 (10th Cir. 1996); see also United States v. Lambert, 46 F.3d 1064, 1068 (10th Cir. 1995) ("[W]hat began as a consensual encounter quickly became an investigative detention once the agents received Mr. Lambert's driver's license and did not return it to him."); United States v. Walker, 933 F.2d 812, 817 (10th Cir. 1991) ("[T]he encounter in this case was clearly not consensual. Officer Graham retained the defendant's driver's license and registration during the entire time he questioned the defendant."), cert. denied, 502 U.S. 1093 (1992). In this case, however, the government does not rely on Defendant's consent to justify the inspection of the trailer. The legality of Trooper Smith's search "depends not on

consent but on the authority of a valid statute." United States v. Biswell, 406 U.S. 311, 315 (1972). Whether Defendant felt free to leave is irrelevant to Trooper Smith's authority to inspect the cargo. Our analysis is whether the return of Defendant's documents and the issuance of a clean inspection report removed the cargo inspection from the scope of the search justified at the inception. Because we determined that the cargo inspection was reasonably related to the initially proper stop and search, we affirm the district court's denial of Defendant's Motion to Suppress.

Defendant claims that the district court erred in admitting evidence of his possession of $60,000.00 in cash at a New York airport on January 21, 1996. He claims that this evidence is improper bad act evidence under Federal Rule of Evidence 404(b). We review the district court's decision to admit this evidence under an abuse of discretion standard. See United States v. Mitchell, 113 F.3d 1528, 1531 (10th Cir. 1997), cert. denied, ___ U.S. ___, 118 S. Ct. 726 (1998); United States v. Rackley, 986 F.2d 1357, 1362 (10th Cir.), cert. denied, 510 U.S. 860 (1993).

After reviewing the district court's decision to admit this evidence, we believe Defendant misunderstood the basis for its admission. It was not admitted pursuant to Rule 404(b). The evidence was admitted within the bounds of relevant cross-examination under Federal Rule of Evidence 611(b) to impeach the

substantive evidence offered by Defendant and his credibility. Defendant raised the issue of his financial status on direct examination by submitting his tax return and his bankruptcy petition into evidence. See R., Vol. V at 25-27, 81. As we have explained,

> Cross examination "may embrace any matter germane to the direct examination, qualifying or destroying, or tending to elucidate, modify, explain, contradict, or rebut testimony given in chief by the witness." Admission of rebuttal evidence, particularly when the defendant "opens the door" to the subject matter, is within the sound discretion of the district court.

United States v. Troutman, 814 F.2d 1428, 1450 (10th Cir. 1987) (citations omitted); see Fed. R. Evid. 611(b). In this case, as in Rackley, "[t]he government did not offer the evidence for any of the purposes covered by Rule 404, proper or improper, but rather to impeach credibility." Rackley, 986 F.2d at 1363.

Without expressly balancing the probative value and prejudicial effect according to the test set out in Rule 403, the trial court declined to exclude the evidence on that basis. See R., Vol. V at 80-81. "The trial court has broad discretion to examine whether the probative value of evidence substantially outweighs the danger of unfair prejudice," and we find no error in the trial court's conclusion. United States v. Reddeck, 22 F.3d 1504, 1508 (10th Cir. 1994); see United States v. Hardwell, 80 F.3d 1471, 1490 (10th Cir. 1996). The use of the evidence on cross-examination was not unfairly prejudicial in light of Defendant's testimony about his financial condition on direct examination.

-10-

See United States v. Lara, 956 F.2d 994, 997 (10th Cir. 1992).  Our review of the record indicates that the trial court properly admitted the evidence for impeachment purposes.[3]

Finally, Defendant argues that the district court erroneously added two points to his sentence offense level for obstruction of justice.  We review the district court's decision to apply the enhancement under U.S. Sentencing Guideline § 3C1.1 for clear error.  United States v. Fitzherbert, 13 F.3d 340, 344 (10th Cir. 1993), cert. denied, 511 U.S. 1059 (1994).  The enhancement was based on the district court's "specific finding" that Defendant had perjured himself.  United States v. Massey, 48 F.3d 1560, 1573 (10th Cir.), cert. denied sub nom., 515 U.S. 1167 (1995); see R., Vol. VII at 19-21.  "Because 'the trial judge is entitled to observe the defendant at trial and consider in sentencing whether he . . . gave perjured testimony,' we apply deference in reviewing the trial court's finding" of perjury.  United States v. Yost, 24 F.3d 99, 106 (10th Cir. 1994) (quoting United States v. Markum, 4 F.3d 891, 897 (10th Cir. 1993)).  After a thorough review of the record, we hold that the district court's findings clearly satisfied the requirements of the law.  See R., Vol. VII at 20-21; United States v. Smith, 81 F.3d 915, 918 (10th Cir. 1996).  Because we find no clear

---

[3]  Because the offered information was unnecessary to our determination, we deny Defendant's Motion to Supplement.

-11-

error in the district court's decision to apply the two-point enhancement, we affirm.

**AFFIRMED**.