**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 4 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

LARRY BURNETT, also known as
Christopher Simmons, also known as
Larry Miller,

    Defendant-Appellant.

No. 98-6224
(W. District of Oklahoma)
(D.C. No. CR-96-58-M)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Chief Circuit Judge, **EBEL,** and **MURPHY**, Circuit Judges.

    Oklahoma City police, acting on a tip, searched Larry Burnett and his half-sister Katrice Glass after they arrived on a flight from Los Angeles. They found 5.9 kilograms of cocaine base in Glass' bag. Significant circumstantial evidence linked Burnett thereto. A jury convicted Glass of possession with intent to distribute, and Burnett of aiding and abetting her. This court affirmed Glass'

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

conviction, but reversed Burnett's, holding that the district court had violated his rights by admitting evidence of Glass' post-arrest comments inculpating him. *See United States v. Glass*, 128 F.3d 1398, 1402–05, 1410 (10th Cir. 1997) (applying rule of *Bruton v. United States*, 391 U.S. 123 (1968)). On remand, a jury convicted Burnett of the same offense, and the court sentenced him to almost 25 years' imprisonment. He appeals, alleging ten errors. This court has jurisdiction under 28 U.S.C. § 1291. Because the district court's only error lay in admitting evidence of Burnett's prior crack use, and that error was harmless, we affirm.

I.    FACTS AND PROCEEDINGS

Four Oklahoma City police detectives, including Bo Leach and David Rivers, met two DEA agents at Oklahoma City's airport. The agents described a man and woman suspected of smuggling drugs on a flight from Los Angeles. The tip was based on an airport drug-interdiction agent's observation of the two, and on when and how they had bought their one-way tickets. The detectives went to the gate to await the flight.

Soon after it arrived, Burnett got off. Rivers and another detective followed him, noting that he walked alone, had no bag, and looked back several times, sometimes stopping to do so. He left the airport without picking up a bag and stood outside. Meanwhile, Leach and another detective followed Glass, who had been one of the last passengers off the plane. She had two bags. She left the airport and stood outside near Burnett.

Detective Rivers identified himself to Mr. Burnett and asked to see his ticket and identification. Burnett showed him a one-way ticket from Los Angeles, paid in cash, and a California driver's license, both in the name "Larry Miller." Rivers then patted Burnett down for drugs, finding a few grams of what Burnett promptly admitted to be marijuana. Rivers arrested him.

Detective Leach, meanwhile, approached Ms. Glass, who let him search her bags. One held not women's clothing, but men's underwear and socks. Nestled among them were twelve bars of a tan, caked substance, each in a plastic baggie wrapped tightly with clear tape and tucked into a sock. Leach concluded that the substance was crack, and arrested Glass.

The detectives took Burnett and Glass to separate offices. They then found that Burnett had a baggage-claim check. They retrieved the bag, which held men's shirts and pants, but no underwear or socks.

Burnett told Rivers he had come to Oklahoma to visit his grandmother, Ruthy Maye Simmons. He said she might pick him up at the airport, but later said she was senile; he did not answer Rivers' query how, if senile, she could pick him up. Burnett said he worked for a wrecker company in Los Angeles, but could not recall its name or phone number or any of his coworkers' names. He also gave a birthdate that proved false. When Rivers told him police had found a large amount of drugs on Glass, and asked if he knew her, Burnett said he did not. He claimed never to have seen her before the flight.

Leach later questioned Burnett and wrote out a statement. Burnett gave an address for Ruthy Maye Simmons that proved nonexistent. He asserted again that he had never met Glass. Admitting the marijuana was his, he said, "I smoke marijuana daily, but I haven't smoked coke for over a year." He signed the statement as "Larry Miller."

Police testing revealed that the tan, caked substance was cocaine base, and recovered one identifiable fingerprint, which matched Burnett's. The print was near the serrated end, on the adhesive side, of one of the pieces of tape wrapped around the baggies of cocaine.

Glass eventually told police that she and Burnett were half-siblings, and that Simmons was their grandmother, but was dead. *See Glass*, 128 F.3d at 1402. She also confessed, as Leach recounted at the first trial, that "'she had knowingly transported the narcotics along with [Burnett] to Oklahoma City.'" *Id.*

The government tried Burnett and Glass together. *See id.* Glass did not testify, but Leach recounted her comments. *See id.* at 1402, 1404. The jury convicted her of possession with intent to distribute, and Burnett of aiding and abetting her. *See id.* at 1402. This court reversed Burnett's conviction, holding that the court had violated his constitutional right to confront witnesses against him by admitting Glass' comments about their sibling relationship and his guilt, and that the error was not harmless beyond a reasonable doubt. *See id.* at 1402–05.

On remand, Burnett stipulated that Glass is his half-sister. The prosecutor used the above evidence, except Glass' comments that Burnett was guilty and that Simmons was dead. A jury convicted Burnett of aiding and abetting. The court, upon finding the cocaine base to be crack and Burnett's role in the offense not to have been minor, sentenced him to 292 months' imprisonment.

II. DISCUSSION

A. Challenges to the Conviction

1. *Rule 404(b) Evidence*

Burnett's written statement to police admitted: "I smoke marijuana daily, but I haven't smoked coke for over a year." Rule 404(b) bars admission of "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). The court nonetheless denied without comment Burnett's request to redact the "smok[ing] coke" remark from the statement. The government concedes that the court thereby abused its discretion, but deems the abuse harmless, stressing the remark's brevity and exculpatory purpose, the lack of reference to it at trial, and the substantial evidence of guilt.

A nonconstitutional error is harmless if, "after pondering all that happened without stripping the erroneous action from the whole," this court is "sure that the error did not influence the jury, or had but very slight effect." *Kotteakos v. United States*, 328 U.S. 750, 764–65 (1946). The inquiry is not "whether there

was enough to support the result, apart from the . . . error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." *Id*.; *see also O'Neal v. McAninch*, 513 U.S. 432, 435, 437–38 (1995) ("By 'grave doubt' we mean that, in the judge's mind, the matter is so evenly balanced that [the judge] feels . . . in virtual equipoise as to the harmlessness of the error." (explicating *Kotteakos* standard)). This court must review the entire record "'without benefit of such aids as presumptions or allocated burdens of proof'" to determine if we can be sure that the "smok[ing] coke" comment affected the jury very slightly or not at all. *O'Neal*, 513 U.S. at 437 (quoting Roger J. Traynor, *The Riddle of Harmless Error* 26 (1970)).

Harmlessness depends on the context in which improper evidence is admitted, and how it was used at trial. *See Glass*, 128 F.3d at 1403 (citing *Bond v. Oklahoma*, 546 F.2d 1369, 1376 (10th Cir. 1976)). The court admitted the "smok[ing] coke" comment as part of Burnett's statement. Leach testified that he wrote the statement and Burnett read and signed it as "Larry Miller." The prosecutor then offered it as an exhibit. In a sidebar, counsel for Burnett unsuccessfully asked the court to redact the comment. No one, however, ever read or alluded to the coke reference in the jury's presence. The prosecutor only used other parts of the statement to show Burnett's dishonesty. The jury heard opening arguments, five witnesses' testimony, and closing arguments, all focused

only on the day of Burnett's arrest, with no hint of his prior cocaine use. The written statement, however, did go to the jury room.

The weight of proper evidence in a case also helps determine the risk that improper evidence substantially affected a jury. *See, e.g.*, *United States v. Wilson*, 107 F.3d 774, 786 (10th Cir. 1997). As noted above, the *Glass* panel deemed the properly admitted evidence against Burnett not overwhelming. *See* 128 F.3d at 1404. It summarized the evidence as showing that Burnett flew with Glass and repeatedly looked over his shoulder after leaving the plane; had luggage holding only pants and shirts, while Glass' bag held men's underwear and socks; apparently lied about visiting his grandmother; addressed Glass by a nickname and told her everything would be all right; and had left a fingerprint on a piece of the tape found around the cocaine. *See id.* at 1403–04. The panel discounted all but the last fact as evincing at most that Burnett traveled with Glass. *See id.* at 1404. It deemed the fingerprint "ambiguous," as it could show either that Burnett had taped up the crack, or that he had previously used the tape for unrelated "innocent activities," leaving a print at the end of the roll. *Id.*

The properly admitted evidence on remand was stronger. The parties stipulated that Burnett and Glass were half-siblings, and the prosecution stressed Burnett's repeated denials that he had ever seen her before. The *Glass* panel, by contrast, held that the district court had erred by admitting Glass' statements that she and Burnett were half-siblings. *See* 128 F.3d at 1404–05. Those comments

were the only evidence establishing that relationship, and thus showing that Burnett's denials that he knew Glass were patently false. *See id.* In addition, the *Glass* panel's view of the evidence does not control this appeal because the error in *Glass* was constitutional, requiring this court to apply a stricter harmlessness standard. *See id.* at 1402–03.

While the circumstantial case against Burnett in the second trial was not overwhelming, it was very strong. It combined the fingerprint and the two bags' complementary clothing; Burnett's suspicious conduct *before* the police approached him; and his false exculpatory statements *after* his arrest.

The suspicious pre-arrest activity comprises carrying a false ID and acting as if he was not traveling with Glass. Burnett's counsel argued that Burnett had denied knowing Glass not because he was conscious of his guilt, but to shield her from the consequences of his marijuana possession, or because police had told him of the cocaine in her bag. No such innocent motive, however, can explain his deceptive conduct before his arrest. The innocent explanations, moreover, are not compelling, and were presented to the jury only fleetingly. While the fingerprint is ambiguous, and could reflect an innocent coincidence, the contents of the luggage reinforce the guilty interpretation. The crack's placement among what were almost surely Burnett's clothes could also be a coincidence, done without his knowledge. A pair of such coincidences, however, strains credulity. It seems very likely that the jury focused on that pair of suspicious coincidences, and saw

Burnett's deceptive pre-arrest conduct and false post-arrest statements as favoring the guilty rather than the innocent explanation thereof.

Most significantly, the prosecution never mentioned Burnett's reference to cocaine use. The short trial focused instead on the circumstantial physical evidence, and on how the circumstantial behavioral evidence showed a consciousness of guilt, and made the "innocent coincidences" view of the physical evidence not just unlikely, but wholly implausible. This court thus concludes that it is unlikely that the jury, during its brief deliberations, shifted its focus to rely more than very slightly, if at all, on Burnett's passing reference to prior cocaine use.

2. *Sufficiency of the Evidence*

For the reasons discussed above, we conclude that the evidence as a whole, with all reasonable inferences drawn in the government's favor, sufficed to allow a reasonable jury to find Burnett guilty beyond a reasonable doubt. *See, e.g.*, *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (explaining sufficiency standard).

3. *Other Specific Items of Evidence*

a. Lost or Destroyed Evidence.

Burnett challenges under the best-evidence rule the admission of testimony describing documents that the police destroyed before the first trial, i.e., the "Larry Miller" driver's license and airplane ticket, and the baggage-claim ticket. *See* Fed. R. Evid. 1002 (requiring use of original to prove content of writing).

We review for abuse of discretion. *See, e.g., United States v. Tome*, 61 F.3d 1446, 1449 (10th Cir. 1995).

Originals are not required if they "are lost or have been destroyed, unless . . . in bad faith." Fed. R. Evid. 1004. Rivers testified that the police property room asked the investigating officers whether to retain the documents, and "someone then inadvertently [told] them that [they] could be destroyed." Burnett has never alleged that this inadvertence was in bad faith. In *United States v. Shoels*, the government offered photographs of forged checks and testimony that the originals had been in an FBI agent's briefcase when it was stolen. *See* 685 F.2d 379, 384 (10th Cir. 1982). Noting simply that "[b]ad faith was not alleged or found," we held the court had not abused its discretion by admitting the photos. *See id; see also Chandler v. United States*, 318 F.2d 356, 356–57 (10th Cir. 1963) (similar). While the excuse in *Shoels* was more compelling, and the substitute evidence more reliable, the same rationale applies in this case: nothing suggests the police destroyed the documentary evidence in bad faith.

Burnett also challenges testimony about the luggage and clothes, which were also destroyed. The best-evidence rule does not ordinarily govern such nondocumentary evidence. *See Chandler*, 318 F.2d at 357; 6 *Weinstein's Federal Evidence*, §1001.03[02], at 1001–10 (2d ed. 1997). We instead analyze its loss or destruction under a fair-trial rubric. *See United States v. Monaco*, 700 F.2d 577, 580 (10th Cir. 1983) ("[T]he crucial question is whether the defendant could

receive a fair trial without the missing evidence."); *United States v. Baca*, 687 F.2d 1356, 1360 (10th Cir. 1982). Burnett did not object to testimony about the luggage and clothing. We thus review for plain error. *See United States v. Olano*, 507 U.S. 725, 732–35 (1993). Burnett must "make a specific showing of prejudice." *Id.* at 734. He cannot do so, for he gives no reason to doubt that the testimony correctly described the lost evidence or to think that his inability to examine the evidence made his trial unfair. *Cf. Baca*, 687 F.2d at 1361 (relying on lack of reason to doubt testimony, despite recognizing defendant's interest in independently testing alleged heroin).

b.    Alias Evidence

Burnett claims the district court abused its discretion by admitting testimony about the lost evidence because it was substantially more prejudicial than probative. *See* Fed. R. Evid. 403. He confuses the prejudice caused by any probative evidence, however, with the "unfair prejudice" addressed by Rule 403. That rule limits use of evidence with "'an undue tendency to suggest decision on an improper basis, commonly . . . an emotional one.'" *United States v. Martinez*, 938 F.2d 1078, 1082 (10th Cir. 1991) (quoting Fed. R. Evid. 403, advis. comm. note) (alteration ours). The luggage testimony plainly had no such tendency.

Jurors may react hostilely to use of an ID and airline ticket in a false name. *Cf. Glass*, 128 F.3d at 1408 (noting potential unfair prejudice of alias evidence). While such evidence could provoke jurors to dislike Burnett as a liar,

"[p]ossession of a false driver's license is not the kind of offense that is so likely to arouse the jury's passions against the defendant that they are likely to convict him of . . . possession with intent to distribute cocaine on [that basis alone]." *United States v. Kloock,* 652 F.2d 492, 495 (5th Cir. Unit B Aug. 1981).

Burnett's use of a false ID and name tended to prove a key issue: whether he knew of the crack before police told him of it. *See Glass*, 128 F.3d at 1408 (noting that use of alias to hide identity from police tends to show consciousness of guilt); *cf. United States v. Scarborough*, 128 F.3d 1373, 1379–80 (10th Cir. 1997) (noting claim that "jury might infer from . . . [false] license that defendant had been involved in illegal activities long before the crime in question," but affirming admission by noting simply that license tended to prove "key issue at trial"). The prosecutor never hinted that the false ID showed a criminal history, as opposed to guilt and fear of detection for the charged offense. Burnett cites no opinion holding the admission of relevant alias evidence to have exceeded the particularly broad discretion enjoyed by district courts under Rule 403. *See United States v. Burch*, 153 F.3d 1140, 1144 (10th Cir. 1998) (noting breadth of discretion). Nor is this such a case.

c.    DEA Tip and Ticket Profiling

Burnett challenges as hearsay the police testimony about the DEA tip that initiated the investigation, and as more unfairly prejudicial than probative testimony about the ticket profiling from which that tip arose.

While Burnett's counsel alluded before trial to the hearsay character of testimony about the tip, he never objected to it. We thus review for plain error. *See Martinez*, 76 F.3d at 1150. Out-of-court statements "'are not hearsay when offered for the limited purpose of explaining why a Government investigation was undertaken.'" *United States v. Wilson*, 107 F.3d 774, 780 (10th Cir. 1997) (quoting *United States v. Freeman*, 816 F.2d 558, 563 (10th Cir. 1987)). Leach testified briefly about the tip, without recounting incriminating out-of-court statements, in order to establish why police were awaiting Glass' and Burnett's plane. It was not plain error to admit his testimony.

Burnett did object, in an unusual way, to the ticket-profiling testimony. His counsel first raised the topic. While cross-examining Detective Rivers, he asked, "What really happened that morning is you received some information about a profile . . . that certain individuals fit the general characteristics of someone . . . worth talking to; is that right?" Rivers replied that "I believe it was more [that] the ticket met . . . [a] ticket profile." When the prosecutor began to raise the topic on re-direct, Burnett's counsel objected. At the bench, he said that he expected the prosecutor to elicit testimony about when Burnett and Glass had bought their tickets, how they had paid, and how they had acted; he objected on hearsay and Rule 403 grounds. But the prosecutor rejoined that "[a]ll I'm going to ask is what is a ticket profile. [Rivers] will give a generic description." And

so he did, discussing very briefly the basic criteria of such a profile.[1]  He never

testified as to how Burnett's and Glass' tickets fit a profile, explained evidence in

light thereof, or hinted that, because Burnett's ticket fit a profile, he was more

likely guilty.  Neither the prosecutor nor any other witness subsequently

mentioned the issue.

Burnett thus opened the door, and the prosecution responded modestly.

This court has long held that rebuttal examination "'may embrace any matter . . .

tending to elucidate, modify, explain, contradict, or rebut [prior] testimony,'" and

has left admission of such evidence, "particularly when the defendant 'opens the

door' to the subject matter," to the district court's "sound discretion."  *Burch*, 153

F.3d at 1144 (quoting *Leeper v. United States*, 446 F.2d 281, 288 (10th Cir. 1971)

(intermediate quotation omitted)).  Rivers' testimony explained a topic Burnett

had left hanging on cross-examination.  The government did not, as Burnett now

argues, use profile evidence to prove guilt,[2] or use police witnesses as experts to

tell the jury what to infer from the evidence.  The court did not abuse its broad

---

[1]He explained that a "ticket profile" meant "a ticket that was purchased, one, in cash, a lot of times . . . 30 to 45 minutes prior to the flight leaving.  It will be cash one way . . . [o]r sometimes . . . cash and . . . a quick turnaround.  Say they come from L.A. to Oklahoma City, going back two hours later, whatever. Those are the items that we look for."

[2]We thus do not address Burnett's argument against such use of profile evidence.  *Cf. United States v. McDonald*, 933 F.2d 1519, 1523 (10th Cir. 1991) (reserving judgment on issue).

discretion to control the scope of examination by allowing Rivers' brief testimony.

4.     *Jury Instruction on Punishment*

Burnett argues that the court abused its discretion by refusing to instruct the jury about the sentence he would receive if convicted. He claims without citing authority that, by making such calculations reasonably certain, the guidelines have displaced prior caselaw, which not only did not require instructions on punishment, but made it error to give them. *See Rogers v. United States*, 422 U.S. 35, 40 (1975); *see also Shannon v. United States*, 512 U.S. 573, 579 (1994) (affirming *Rogers* in recent, yet non-Guidelines, case). We have held, however, that "nothing in the sentencing guidelines . . . suggest[s] that [they] were intended to alter the usual rule reserving punishment issues for the sentencing court." *United States v. Pena*, 930 F.2d 1486, 1492 (10th Cir. 1991).

5.     *False-Exculpatory-Statements Instruction*

The court instructed the jury that it could infer guilt from false exculpatory statements "knowingly and voluntarily made by defendant upon being informed that a crime had been committed or upon being accused of a crim[e]." Burnett argues that it thereby erred. He reasons that, as he was arrested for marijuana possession, his lies only served to deny, and thus only tended to imply guilt of, that crime. The government rejoins that Burnett plainly lied to distance himself from the cocaine, not the marijuana: he told most of his lies *after* he had freely admitted possessing the marijuana in his pocket, and told the most important one,

-15-

that he did not know Glass, after police had told him about the cocaine. A jury could reasonably infer consciousness of guilt about the cocaine from some if not all of Burnett's lies. His arguments only show that such inferences were not inevitable; they do not show that the court erred in instructing the jury that it could draw them.

B.    Sentencing Issues

1.    *Role-in-the-Offense Reduction*

Burnett appeals the court's refusal to reduce his offense level because he was less culpable than Glass. A court has discretion to reduce the offense level of a convict who played a minor role in a crime. *See* U.S. Sentencing Guidelines Manual § 3B1.2 (1997) ["U.S.S.G."]. Its exercise of this discretion is very case-specific. *See id.*, cmt. Background. A convict has the burden of proving his or her entitlement to a § 3B1.2 reduction. *See, e.g.*, *United States v. Lockhart*, 37 F.3d 1451, 1455 (10th Cir. 1994). This court reviews the district court's fact findings for clear error, and its exercise of discretion in applying the guidelines to those facts "with due deference." *United States v. James*, 157 F.3d 1218, 1219 (10th Cir. 1998); *see also* 18 U.S.C. § 3742(e) (stating "due deference" standard).

The court reasoned as follows in denying Burnett a minor-role reduction:

Defendant does not qualify as a minor participant . . . . He was traveling with . . . Glass. His . . . fingerprint was found on the tape which packaged one of the bundles of the cocaine . . . . Further, there is no evidence that . . . Burnett[] lacked . . . knowledge or understanding of the activities in this case. [Though] found guilty of

-16-

the crime of aiding and abetting . . . he may under the law be treated as a principal for the offense for which he was convicted.

Burnett makes two arguments on appeal. One is that, because he was only convicted for aiding and abetting, his role was necessarily minor. The other is that the court's ruling contradicts its prior finding, in denying Glass a § 3B1.2 reduction, that she was "clearly the more culpable of the two."

Burnett cites no authority for a rule that a court must or usually should deem minor or minimal the role of one convicted only for aiding and abetting. *Cf. United States v. Ortiz*, 966 F.2d 707, 717 (1st Cir. 1992) ("Considering that role-in-the-offense determinations are ordinarily factbound, and that Nunez was charged only with aiding and abetting . . ., we do not believe that the sentencing court was legally required to label him a minor or minimal participant . . . .") Such a rule would be in tension with the aiding-and-abetting statute, which makes "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission . . . punishable as a principal." 18 U.S.C. § 2(a). The guidelines, in addition, make the offense level for aiding and abetting "the same level as that for the underlying offense." U.S.S.G. § 2X2.1. Those rules subject an aider-and-abettor "to the same punishment as the principal." *United States v. Sarracino*, 131 F.3d 943, 946 (10th Cir. 1997).

Burnett's second argument does not focus on the facts any more than his first. He relies on the court's finding, in sentencing Glass, that she was "clearly the more culpable of the two." That finding echoed her PSR. Even assuming that

the finding somehow bound the court in Burnett's case, it did not say that Glass was *substantially* more culpable. *See* U.S.S.G. § 3B1.2, cmt. Background (saying section applies to convict whose part in offense "makes him substantially less culpable than the average participant"); *United States v. Williamson*, 53 F.3d 1500, 1524 (10th Cir. 1995) (suggesting but not holding court may require convict to prove he or she was "substantially" less culpable than average participant). This court has held that a convict "is not entitled to a reduction under 3B1.2 simply because he is the least culpable among several participants." *Lockhart*, 37 F.3d at 1455 (citing *United States v. Caruth*, 930 F.2d 811, 815 (10th Cir. 1991) ("[T]he Guidelines permit courts not only to compare a defendant's conduct with that of others in the same enterprise, but with the conduct of an average participant in that type of crime.")).

Burnett has never meaningfully tried to carry his burden of proving that his role made him substantially less culpable than Glass, and/or the average person convicted of this type of crime. There is simply no evidence of his and Glass' respective roles in the scheme to smuggle crack to Oklahoma City, except that she carried the bag holding the crack; it was bundled in his socks; and his fingerprint was found on a piece of the tape used to wrap it, while hers was not. *Cf. United States v. Sukiz-Grado*, 22 F.3d 1006, 1009 (10th Cir. 1994) ("[T]o weigh relative culpability, 'evidence must exist of other participants and their role in the criminal activity.'" (quoting *United States v. Arredondo-Santos*, 911 F.2d 424,

-18-

425 (10th Cir. 1990))).  Burnett never suggests what substantially less culpable role he played.  He only notes the lesser amount of evidence that he, as compared to Glass, was involved *at all*.  The jury, though, found that he was involved.  The lack of evidence of his and Glass' relative roles makes it impossible to say the court erred in concluding that his was not minor.

2.    *Proof that the Cocaine Base Was "Crack"*

Burnett's brief argues that, because the police did not test the cocaine base for sodium bicarbonate, the court erred in treating it as "crack" for sentencing purposes.  This court has since foreclosed that argument.  *See United States v. Brooks*, 161 F.3d 1240, 1248–49 (10th Cir. 1998) (rejecting claim that, because note to U.S.S.G. § 2D1.1(c) says crack is "usually prepared by processing cocaine hydrochloride and sodium bicarbonate," government must prove alleged "crack" contains sodium bicarbonate).  *Brooks* does, however, require the government to prove by a preponderance of the evidence that any given cocaine base is "crack"; it simply holds that sodium bicarbonate is not a necessary element of that proof. *See id.*; *see also United States v. Cantley*, 130 F.3d 1371, 1379 (10th Cir. 1997). We will treat the determination that a substance was "crack" as a factual finding and review it for clear error.[3]

---

[3]This court has never set a standard for reviewing a determination that a substance was "crack" for purposes of § 2D1.1(c).  We review drug-quantity calculations for clear error.  *See, e.g.*, *United States v. McIntyre*, 997 F.2d 687, 710 (10th Cir. 1993).  In *McIntyre*, we recited that rule but went on to review for clear error a determination not of the quantity but of the type of drug.  *See id.*; *see*

-19-

Leach testified he had been in the drug-interdiction unit for nearly four years and had bought many drugs undercover. He showed familiarity with crack by detailing how it is distributed and used. He testified that when he saw the substance in Glass' bag, his experience led him to conclude that it was "crack cocaine." Police chemist Richard Dawes discussed his testing of the substance and the nature of cocaine base. He testified that the substance in Glass' bag was cocaine base, and verified his written report, which was admitted. He stressed, though, that as a chemist he was not qualified to say if the cocaine base fit the legal or street definition of "crack." He repeated that caveat at the sentencing hearing, but he did agree that the substance was "like many other . . . substances brought to [him] and identified by the police officers as crack cocaine[.]"

Dawes' testimony and report establish that the substance was "cocaine base," and suggest but do not establish that it was "crack" for purposes of § 2D1.1(c). Leach, however, testified directly that the substance was "crack cocaine," based on direct examination in light of his experience. *Cf. Cantley*, 130 F.3d at 1378 (relying in part on police officer's identification of substance as crack); *United States v. Roman*, 121 F.3d 136, 141 (3d Cir. 1997) (holding

---

*also United States v. Cantley*, 130 F.3d 1371, 1378 (10th Cir. 1997) (noting "clear error" review of factual findings and referring interchangeably to proof of "amounts and types of controlled substances"); *United States v. Jones*, 159 F.3d 969, 982 (6th Cir. 1998) (stating "clear error" standard of review of finding substance was crack); *United States v. Roman*, 121 F.3d 136, 140 (3d Cir. 1997) (same).

government "just barely" carried its burden by relying wholly on opinion testimony of very experienced narcotics officer). The evidence thus suffices to establish that the cocaine base was "crack" for purposes of § 2D1.1(c). Burnett offered no contrary evidence, besides the possible absence of sodium bicarbonate. He has not suggested any other type of cocaine base that it could have been. *Cf. United States v. Munoz-Realpe*, 21 F.3d 375, 377 (11th Cir. 1994) (holding liquid cocaine base not "crack"); U.S.S.G. app. C, amend. 487 (giving coca paste as example of non-crack cocaine base); *Cantley*, 130 F.3d at 1379 (recognizing burden is on government to prove substance was crack, but noting that convict "has produced no evidence whatsoever to show that the substances were not crack"). The court did not clearly err in its finding.

III.   CONCLUSION

Burnett has identified only one harmless error at his trial, and no error in his sentencing. This court thus **affirms** his conviction and sentence.

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge

-21-